Docket No. 90911–Agenda 18–November 2001.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ERIN N. THUROW, Appellee.

Opinion filed February 6, 2003.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

Defendant Erin Thurow was charged, under sections 9–3(a) and (f) of the Criminal Code of 1961 (720 ILCS 5/9–3(a), (f) (West 1998)), with involuntary manslaughter of a family or household member. The jury was instructed on the elements of simple involuntary manslaughter (720 ILCS 5/9–3(a) (West 1998)), and defendant was found guilty by the circuit court of Will County. At sentencing, the judge determined that defendant was eligible for an enhanced sentence because the victim, Michael Mostowski, was a member of defendant’s household. 720 ILCS 5/9–3(f) (West 1998). In the alternative, the judge concluded that defendant was eligible for an extended-term sentence because of the tender age of the victim. 730 ILCS 5/5–5–3.2(b)(4)(i) (West 1998). The court sentenced defendant to eight years in prison. On appeal, the appellate court vacated the sentence, concluding that it violated the Supreme Court’s holding in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). The appellate court remanded for a new sentencing hearing, directing that the sentence not exceed the five-year maximum for simple involuntary manslaughter. 318 Ill. App. 3d 128. We allowed the State’s petition for leave to appeal. 177 Ill. 2d R. 315. For the reasons set forth below, we affirm in part and reverse in part the judgment of the appellate court.

BACKGROUND

The following facts, which are essentially undisputed, are taken from the testimony at trial and other materials of record. Defendant Erin Thurow first met Michelle Mostowski in November 1997 when Mostowski moved into a homeless shelter in Elgin where defendant Thurow and her three-year-old daughter, Tianna, were staying. During the next several weeks, the two women became friends. On December 14, defendant left the shelter and moved into an apartment in Joliet, where her daughter joined her a few days later. At defendant’s suggestion, Mostowski moved in with defendant and her daughter on January 2, 1998. For the next eight months, defendant was the sole source of financial support for the household.

Mostowski, who had been pregnant when she entered the shelter in Elgin, gave birth to a son, Michael, on April 21, 1998. Defendant was in the delivery room with Mostowski when the child was born. Up until this time Mostowski, who was not employed, had taken care of defendant’s child while defendant was working. Subsequently, Mostowski watched both of the children.

In September 1998, Mostowski returned to work. She and defendant were on different shifts, but for a time there was an overlap of about four hours a day when they were both at work and needed to hire a baby-sitter for their children. In January 1999, defendant and Mostowski adjusted their work schedules so they were working opposite shifts and no longer needed to hire a baby-sitter. Mostowski worked from 7 a.m. to 3 p.m. at a local restaurant, and defendant worked from 4 p.m. to midnight at a different restaurant. Each watched the children while the other was at work.

Prior to February 11, 1999, the date of the victim’s death, defendant had indicated to Mostowski that she thought Mostowski was too indulgent with Michael and was spoiling him. The two women occasionally argued about this, with defendant telling Mostowski that she had difficulty consoling Michael when Mostowski went to work, and Michael’s constant crying frustrated her. Beginning in late 1998, unbeknownst to Mostowski, defendant had begun putting her hand over Michael’s mouth to calm him down. Defendant testified at trial that she did this a total of about 30 to 40 times, and that it seemed to work and did not seem to hurt him.

On the morning of February 11, defendant awoke at about 6 a.m. after falling asleep on the couch the night before. Mostowski left for work that morning at about 8 a.m. Before leaving, she placed Michael in his walker and left him next to the couch. Defendant then went back to sleep on the couch. At about 10 a.m. she awoke when she heard Michael crying. She tried to calm him but was unsuccessful. At about 10:30 a.m. she took him to his crib for a nap. He was still crying, so she put her hand over his mouth to quiet him down. Defendant testified that she held her hand there until he was quiet, about 15 seconds. He took a breath of air, and his legs and arms moved. Defendant then turned him over on his stomach, pulled his blanket up, and left the bedroom.

Defendant’s boyfriend arrived at about 1:30 p.m., and defendant borrowed his car and went shopping. According to defendant, when she returned about 45 minutes later, her boyfriend said he had checked on Michael while she was out, and the child was still sleeping. Defendant’s boyfriend left at about 2:45 p.m., and at about 3 p.m. defendant went to check on Michael.

The first thing she noticed was that he did not move when she came through the doorway. She went to the crib and discovered that he was cold and not breathing. Defendant telephoned Mostowski at work and told her that there was an emergency and she should come home. Defendant then telephoned her employer and stated that the baby was dead. Defendant’s manager told her to call 911. She did, and the 911 operator instructed her on CPR, which she performed. Police and emergency personnel arrived, as did Mostowski. The child was taken to the hospital, and Mostowski went there as well. The police left, and defendant and her daughter remained in the apartment.

About two hours later, Joliet police detectives Jeff Allbert and Richard Raasch arrived at the apartment and questioned defendant. She told them what happened, but omitted mentioning that she had held her hand over Michael’s mouth. Defendant and her daughter were then taken to the police station, where police first questioned defendant’s daughter and then spoke to defendant. They told defendant that there were inconsistencies between her story and her daughter’s. Defendant then “broke down” and again told police what had happened, this time including the fact that she had put her hand over Michael’s mouth. She was then arrested.

Forensic pathologist Brian Mitchell, who performed an autopsy on Michael the next day, testified that, to a reasonable degree of medical certainty, it was his opinion that Michael died of suffocation. Mitchell’s examination of Michael revealed a pinpoint hemorrhage in one eye, bruising around his mouth, and swelling of the brain, all of which were consistent with death by asphyxiation. Mitchell added that he found evidence in Michael’s lungs indicative of prior episodes of suffocation.

Defendant was subsequently indicted for involuntary manslaughter with the enhancement that the victim was a family or household member, which is a Class 2 felony. The indictment, as presented to the jury, read:

“[S]aid defendant, acting in a reckless manner, performed an act likely to cause death or great bodily harm to some individual, in that she covered the mouth and nose of Michael Mostowski with her hand, thereby causing the death of Michael Mostowski, a family or household member of the defendant.”

At trial, the judge instructed the jury on the elements of involuntary manslaughter:

“To sustain the charge of involuntary manslaughter, the State must prove the following propositions: First proposition, that the defendant performed the acts which caused the death of Michael Mostowski, and, second proposition, that the defendant performed those acts recklessly, and, third proposition, that those acts were likely to cause death or great bodily harm.”

The State offered no instruction regarding the proposition that the victim was a family or household member of defendant. The defense did not object to the proposed instruction.

Defendant was convicted on September 2, 1999. Defense counsel moved for a new trial, and the motion was denied.

The State argued at the sentencing hearing that defendant should be sentenced to at least 10 years in prison. Defense counsel argued for probation. He noted in addition that the jury was not instructed on the element of Michael’s being a family or household member of defendant. Defense counsel thus contended that if defendant were given a prison sentence, it could not exceed the two-to-five-year range for simple involuntary manslaughter, which is a Class 3 felony. The judge rejected defense counsel’s arguments, finding that defendant “was a household member of Michael Mostowski” and the 3-to-14-year enhanced sentencing range for involuntary manslaughter therefore applied. According to the statute, “household members” include “persons who share or formerly shared a common dwelling.” 725 ILCS 5/112A–3(3) (West 1998). The judge added that even if Michael were not a member of defendant’s household, defendant was eligible for an extended-term sentence because of the tender age of the victim. Accordingly, defendant was sentenced to eight years in prison, a term that is within both the 3-to-14-year enhanced sentencing range (720 ILCS 5/9–3(f) (West 1998)) and the 5-to-10-year range for an extended-term sentence (730 ILCS 5/5–8–2(a)(5) (West 1998)). Defendant’s motion to reconsider sentence was denied.

On appeal (318 Ill. App. 3d 128), the appellate court concluded that defendant’s sentence was imposed in violation of 
Apprendi v. New Jersey
, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455, 120 S. Ct. 2348, 2362-63 (2000), which held that “[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” The appellate court noted that the jury in the instant case “was instructed to make a finding on only the basic elements of involuntary manslaughter” and “did not make a finding beyond a reasonable doubt that the victim was a family or household member.” 318 Ill. App. 3d at 134. According to the appellate court, because there was no jury finding as to this enhancement element, it was improper to sentence defendant “under the enhancement provision of the involuntary manslaughter statute.” 318 Ill. App. 3d at 134.

The appellate court also rejected the argument that defendant was eligible for an extended-term sentence based on the tender age of the victim. The court noted that the question of the victim’s age was not before the jury, and it would therefore be a violation of 
Apprendi
 to impose an extended-term sentence based on this factor. The court concluded that the extended-term provision at issue (730 ILCS 5/5–5–3.2(b)(4)(i) (West 1998)) is “unconstitutional under 
Apprendi
 to the extent that it allows an increase in punishment for a felony based on the age of the victim where that specific finding is not charged to the jury.” 318 Ill. App. 3d at 135.

Accordingly, as noted above, the appellate court vacated defendant’s sentence and remanded for a new sentence not to exceed the five-year statutory maximum for the Class 3 felony of simple involuntary manslaughter. We allowed the State’s petition for leave to appeal. 177 Ill. 2d R. 315.

ANALYSIS

Involuntary manslaughter is a Class 3 felony (720 ILCS 5/9–3(d)(1) (West 1998)) for which the penalty is “not less than 2 years and not more than 5 years” (730 ILCS 5/5–8–1(a)(6) (West 1998)). However, where the victim is a family or household member, involuntary manslaughter is a Class 2 felony “for which a person if sentenced to a term of imprisonment, shall be sentenced to a term of not less than 3 years and not more than 14 years.” 720 ILCS 5/9–3(f) (West 1998). The prescribed maximum penalty of five years thus is increased to 14 years if the victim of involuntary manslaughter is a family or household member of the defendant. Under the rule announced in 
Apprendi
, because this enhancement factor “increase[s] the prescribed range of penalties to which a criminal defendant is exposed,” it is an element of the offense and must be submitted to a jury and proved beyond a reasonable doubt. 
Apprendi v. New Jersey
, 530 U.S. 466, 490, 494, 147 L. Ed. 2d 435, 455, 457, 120 S. Ct. 2348, 2363, 2365 (2000), quoting 
Jones v. United States
, 526 U.S. 227, 252-53, 143 L. Ed. 2d 311, 332, 119 S. Ct. 1215, 1228-29 (1999).

The State effectively concedes that it was a violation of 
Apprendi
 for the trial judge to enhance defendant’s sentence based on a finding that Michael was a member of defendant’s household. The parties agree that the jury was not instructed as to this element, and, therefore, there was no jury determination with regard to this element. However, the State urges that the evidence in support of Michael’s being a household member was “uncontested and overwhelming” and “no properly instructed jury would have found otherwise.” Therefore, according to the State, any failure to instruct the jury was harmless error. Defendant argues that the 
Apprendi
 violation in the case at bar “implicated a host of her most fundamental rights” and therefore harmless-error analysis “would not be appropriate in this case.”

The rights at issue in 
Apprendi
 were unquestionably of constitutional dimension. At stake were “constitutional protections of surpassing importance”: a criminal defendant’s right to a jury determination as to every element of the crime with which he is charged, beyond a reasonable doubt. 
Apprendi
, 530 U.S. at 476-77, 147 L. Ed. 2d at 447, 120 S. Ct. at 2355-56. In 
Apprendi
, as in the instant case, the defendant was given an enhanced sentence based on a finding that was made by the trial judge. The defendant in 
Apprendi
 was indicted on charges stemming from his having fired several shots into the home of an African-American family that had recently moved into an all-white neighborhood. The defendant pleaded guilty, 
inter alia
, to possession of a firearm for an unlawful purpose, an offense that carried a penalty of 5 to 10 years in prison. However, under a separate “hate crime” statute, the defendant was given an enhanced 12-year sentence based on a finding by the judge that the crime was motivated by racial bias. The judge made this finding based upon a preponderance of the evidence, pursuant to the statute at issue.

The Court in 
Apprendi
 held that this procedure unconstitutionally removed from the jury the determination of a fact that increased the maximum penalty to which the defendant was exposed. Hence the holding in 
Apprendi
: “Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

The Supreme Court has not determined whether a violation of this rule could be deemed harmless. The issue was not raised in 
Apprendi
, and it has not been dealt with in subsequent decisions. However, in 
United States v. Cotton
, 535 U.S. ___, 152 L. Ed. 2d 860, 122 S. Ct. 1781 (2002), the Court ruled on a similar question: whether an 
Apprendi 
violation to which there was no timely objection could be viewed as “plain error.” The federal indictment in 
Cotton 
charged the defendants with involvement in a drug conspiracy, but it made no mention of the specific drug quantities that could lead to enhanced penalties. The jury found the defendants guilty, and the district court judge then determined the relevant drug quantities. Based on these findings, the judge imposed sentences that exceeded the statutory maximum reflected by the jury’s verdict. On appeal, the Court in 
Cotton 
applied a plain-error analysis and concluded that, although the indictment’s failure to allege drug quantity violated 
Apprendi
, it “did not seriously affect the fairness, integrity, or public reputation of judicial proceedings” and therefore did not rise to the level of plain error. 
Cotton
, 535 U.S. at ___, 152 L. Ed. 2d at 868-69, 122 S. Ct. at 1785-86. According to the Court, the evidence in support of the judge’s drug-quantity findings was overwhelming and essentially uncontroverted. The Court therefore concluded that the grand jury “surely” would have found the requisite drug amounts. 
Cotton
, 535 U.S. at ___, 152 L. Ed. 2d at 869, 122 S. Ct. at 1786.

Though plain-error analysis normally requires the same kind of inquiry as does harmless-error review, there is an “important difference” between the two. 
United States v. Olano
, 507 U.S. 725, 734, 123 L. Ed. 2d 508, 520, 113 S. Ct. 1770, 1778 (1993). In a harmless-error analysis, which applies where, as in the case at bar, the defendant has made a timely objection, it is the State that “bears the burden of persuasion with respect to prejudice.” 
Olano
, 507 U.S. at 734, 123 L. Ed. 2d at 520, 113 S. Ct. at 1778. In other words, the State must prove beyond a reasonable doubt that the jury verdict would have been the same absent the error. See 
Chapman v. California
, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828 (1967); 
Neder v. United States
, 527 U.S. 1, 19, 144 L. Ed. 2d 35, 53, 119 S. Ct. 1827, 1838 (1999). The situation is different under a plain-error analysis, which applies where the defendant has failed to make a timely objection. There, “[i]t is the defendant rather than the [State] who bears the burden of persuasion with respect to prejudice.” 
Olano
, 507 U.S. at 734, 123 L. Ed. 2d at 520, 113 S. Ct. at 1778. “In most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial.” 
Olano
, 507 U.S. at 734, 123 L. Ed. 2d at 520, 113 S. Ct. at 1778.

Accordingly, while the decision in 
Cotton 
may be viewed as suggesting that the Court eventually will conclude that 
Apprendi
 errors can be harmless, there has been no decision on this precise issue. In the absence of such a holding, we look to the Court’s earlier decision in 
Neder v. United States
, 527 U.S. 1, 144 L. Ed. 2d 35, 119 S. Ct. 1827 (1999), where a jury instruction that omitted an element of an offense was found amenable to harmless-error review. See, 
e.g.
, 
United States v. Nealy
, 232 F.3d 825, 829-30 & n.4 (11th Cir. 2000).

In 
Neder
, the defendant was indicted on a number of fraud counts, including the charge that he filed false statements of income on his tax returns. In instructing the jury regarding the tax offenses, the federal district court incorrectly informed the jury that there was no need to consider whether the false statements were material. Outside the presence of the jury, the district court itself found that the statements were material. The jury subsequently convicted the defendant. On appeal, it was agreed that the district court erred in refusing to submit the issue of materiality to the jury. The Supreme Court acknowledged that the error constituted a violation of the sixth amendment’s jury trial guarantee, but nevertheless held that harmless-error analysis applied.

In reaching this conclusion, the Court in 
Neder
 acknowledged that there is a limited group of errors that have been found to be “structural” and therefore beyond the scope of harmless-error review. Included among these are the complete denial of counsel (
Neder
, 527 U.S. at 8, 144 L. Ed. 2d at 46, 119 S. Ct. at 1833, citing 
Johnson v. United States
, 520 U.S. 461, 468-69, 137 L. Ed. 2d 718, 728, 117 S. Ct. 1544, 1549-50 (1997), citing 
Gideon v. Wainwright
, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963)) and trial before a biased judge (
Neder
, 527 U.S. at 8, 144 L. Ed. 2d at 46, 119 S. Ct. at 1833, citing 
Tumey v. Ohio
, 273 U.S. 510, 71 L. Ed. 749, 47 S. Ct. 437 (1927)). However, the Supreme Court has recognized that most constitutional errors can be harmless. 
Neder
, 527 U.S. at 8, 144 L. Ed. 2d at 46, 119 S. Ct. at 1833; 
Arizona v. Fulminante
, 499 U.S. 279, 306, 309-10, 113 L. Ed. 2d 302, 329, 331, 111 S. Ct. 1246, 1263, 1265 (1991) (opinion of Rehnquist, C.J., for the Court); see also 
Chapman v. California
, 386 U.S. 18, 21-22, 17 L. Ed. 2d 705, 709, 87 S. Ct. 824, 827 (1967) (rejecting the view that a federal constitutional error in a criminal trial can never be harmless). According to the Court in 
Neder
, the omission of an element from a jury instruction falls in this latter group. “Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not 
necessarily
 render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.” (Emphasis in original.) 
Neder
, 527 U.S. at 9, 144 L. Ed. 2d at 47, 119 S. Ct. at 1833. The Court acknowledged that the failure to instruct on an element of the offense prevents the jury from rendering a complete verdict on every element of the offense, and that this violates the sixth amendment’s jury trial guarantee. However, the Court asserted that this merely establishes that such a defective jury instruction is error; it does not answer the question whether the error is subject to harmless-error analysis. As previously noted, the Court in 
Neder
 answered this question in the affirmative.

This holding in 
Neder
 appears to dictate that 
Apprendi
 errors involving jury instructions that omit an element of the offense may be subject to harmless-error review. 
Neder
 has been cited by several courts of appeals in applying harmless-error or plain-error analysis to such violations. 
United States v. Nealy
, 232 F.3d 825, 829 (11th Cir. 2000) (citing 
Neder
, 527 U.S. 1, 144 L. Ed. 2d 35, 119 S. Ct. 1827, in applying harmless-error analysis to the omission of an element from a jury instruction; and concluding that “
Apprendi
 did not recognize or create a structural error that would require 
per se
 reversal”); 
United States v. Green
, 246 F.3d 433 (5th Cir. 2001); 
United States v. Nance
, 236 F.3d 820 (7th Cir. 2000); see also 
United States v. Adkins
, 274 F.3d 444, 454 (7th Cir. 2001) (“[I]t is now well established in this circuit that 
Apprendi
 errors in both the indictment and the charge to the jury are subject to harmless error analysis”).

Notwithstanding the foregoing, defendant argues that, under 
Apprendi
, the statutory scheme under which her sentence was increased is unconstitutional on its face, and therefore void 
ab initio
. See 
People v. Zeisler
, 125 Ill. 2d 42, 46 (1988) (a statute that has been held facially invalid is void 
ab initio
; it is as though no such law had ever been passed). Defendant contends that the statute in question, section 9–3(f) of the Criminal Code of 1961 (720 ILCS 5/9–3(f) (West 1998)), is facially invalid and therefore did not exist in February 1999 when the offense at issue was committed. Absent this statute, which authorized an increase in the penalty if the victim was a member of defendant’s household, this particular sentence-enhancing element did not exist, and defendant’s sentence therefore was a nullity. Accordingly, defendant contends that her sentence must be vacated.

Defendant bases her argument that section 9–3(f) is facially unconstitutional on two grounds. First, she contends that the statute, in violation of 
Apprendi
, fails to “provide for notice of the sentence enhancing facts.” According to defendant, the State is required, under 
Apprendi
, to charge in the indictment any fact that increases the penalty for the offense beyond the statutory maximum. Second, defendant claims that section 9–3(f), again in violation of 
Apprendi
, does not require that the sentence-enhancing facts be proven beyond a reasonable doubt.

With regard to defendant’s “notice” argument, the Supreme Court in 
Apprendi
 specifically declined to address the indictment question. See 
People v. Ford
, 198 Ill. 2d 68, 72 n.1 (2001). The Court noted that the defendant, Charles Apprendi, did not assert a constitutional claim based upon the indictment’s failure to charge the sentence-enhancement factors. Instead, the defendant relied upon the due process clause of the fourteenth amendment, which the Court stated has never been construed to make the fifth amendment right to “presentment or indictment of a Grand Jury” applicable to the states. 
Apprendi
, 530 U.S. at 477 n.3, 147 L. Ed. 2d at 447 n.3, 120 S. Ct. at 2355 n.3. Indeed, 
Apprendi
’s central holding (
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63) makes no mention of any indictment right. Instead, as previously noted, it focuses upon the rights to trial by jury and proof beyond a reasonable doubt. We therefore reject defendant’s argument that 
Apprendi
 requires “notice of the sentence-enhancing facts.” Because no such notice is required, section 9–3(f) cannot be unconstitutional for failure to provide for it.
(footnote: 1)
 As noted, defendant’s other basis for claiming that section 9–3(f) is facially unconstitutional is that the statute fails to require proof beyond a reasonable doubt. Our review of the merits of this claim is guided by the following familiar principles. Legislative enactments carry a strong presumption of constitutionality, and a party challenging the constitutionality of a statute has the burden of clearly establishing its invalidity. 
People v. Falbe
, 189 Ill. 2d 635, 639 (2000); 
People v. Inghram
, 118 Ill. 2d 140, 146 (1987). It is our duty to affirm a statute’s constitutionality if reasonably possible, and any doubts must be resolved in favor of the validity of the challenged enactment. 
Falbe
, 189 Ill. 2d at 639; 
Inghram
, 118 Ill. 2d at 146. A statute is facially unconstitutional only if “ ‘no set of circumstances exists under which the Act would be valid.’ ” 
In re C.E.
, 161 Ill. 2d 200, 210-11 (1994), quoting 
United States v. Salerno
, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707, 107 S. Ct. 2095, 2100 (1987).

As previously set forth, section 9–3(f) provides:

“In cases involving involuntary manslaughter in which the victim was a family or household member *** the penalty shall be a Class 2 felony, for which a person if sentenced to a term of imprisonment, shall be sentenced to a term of not less than 3 years and not more than 14 years.” 720 ILCS 5/9–3(f) (West 1998).

There is no indication here as to the evidentiary standard that is to be applied in making the household-member determination. Under section 9–3(f), this finding could be made by a preponderance of the evidence. However, it also could be made based upon proof beyond a reasonable doubt. Under 
Apprendi
, a finding, based upon a preponderance of the evidence, that the victim was a member of defendant’s household could not form the basis for an enhanced sentence. As noted, such a procedure would be unconstitutional. However, there is no violation if this determination is made beyond a reasonable doubt. Because this latter, constitutionally correct procedure is allowed by section 9–3(f), it cannot be said that there is no set of circumstances under which the statute would be valid. See 
In re C.E.
, 161 Ill. 2d at 210-11. Section 9–3(f) is not unconstitutional on its face. Accordingly, we reject defendant’s contention that section 9–3(f) is void 
ab initio
.

Lacking an explicit Supreme Court holding to the contrary, we are compelled by 
Neder
 to conclude that the 
Apprendi 
violation in the case at bar is subject to harmless-error review. We turn then to an analysis of whether it was harmless error for the judge and not the jury to determine that Michael was a member of defendant’s household.

As set forth in 
Chapman
, the test for determining if a constitutional error is harmless is whether it appears “beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.” 
Chapman
, 386 U.S. at 24, 17 L. Ed. 2d at 710, 87 S. Ct. at 828. The test enunciated in 
Neder
, which we must follow, is slightly different: “Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?” 
Neder
, 527 U.S. at 18, 144 L. Ed. 2d at 53, 119 S. Ct. at 1838. The Court in 
Neder
 found the district court’s failure to submit the issue of materiality to the jury harmless, emphasizing that the evidence in support of materiality was uncontested and overwhelming. The Court explained:

“In a case such as this one, where a defendant did not, and apparently could not, bring forth facts contesting the omitted element, answering the question whether the jury verdict would have been the same absent the error does not fundamentally undermine the purposes of the jury trial guarantee.” 
Neder
, 527 U.S. at 19, 144 L. Ed. 2d at 53, 119 S. Ct. at 1838.

In the case at bar, as in 
Neder
, the evidence in support of the omitted element was uncontested and overwhelming. Both defendant and Mostowski testified to facts establishing that Michael was a member of defendant’s household. It is undisputed that the two women lived together in the same apartment and that each watched the children while the other was at work. The definition of a household member includes “persons who share or formerly shared a common dwelling.” 725 ILCS 5/112A–3(3) (West 1998). Given the evidence in support of this element, it is clear beyond a reasonable doubt that a properly instructed, rational jury would have found defendant guilty of involuntary manslaughter against a household member. We therefore conclude that the failure to instruct the jury as to this element was harmless error.

We recognize, as does the dissent, that there is tension between our conclusion here and the holding in 
Apprendi
. The essence of the holding in 
Apprendi
 is that it is unconstitutional for a judge and not a jury to make a factual finding that increases the penalty for a crime beyond the prescribed statutory maximum. Yet in applying harmless-error analysis here, we are engaging in the very practice that 
Apprendi
 forbids: we, as judges, are making the factual determination that Michael was a member of defendant’s household. Moreover, we are in a sense adding error upon error by repeating the violation committed by the trial judge, who made the original, erroneous determination. See 
Neder
, 527 U.S. at 32, 144 L. Ed. 2d at 61, 119 S. Ct. at 1845 (Scalia, J., concurring in part and dissenting in part, joined by Souter and Ginsburg, JJ.) (“The Court’s decision today [in 
Neder
] is the only instance I know of (or could conceive of) in which the remedy for a constitutional violation by a trial judge (making the determination of criminal guilt reserved to the jury) is a repetition of the same constitutional violation by the appellate court (making the determination of criminal guilt reserved to the jury”). Strict adherence to the 
Apprendi
 rule here would avoid this situation, and would honor the “surpassing[ly] importan[t]” constitutional protections that entitle a criminal defendant to “ ‘a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.’ ” 
Apprendi
, 530 U.S. at 476-77, 147 L. Ed. 2d at 447, 120 S. Ct. at 2355-56, quoting 
United States v. Gaudin
, 515 U.S. 506, 510, 132 L. Ed. 2d 444, 449, 115 S. Ct. 2310, 2313 (1995); see 
In re Winship
, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1073 (1970) (“[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of 
every fact
 necessary to constitute the crime with which he is charged” (emphasis added)).

Undoubtedly, our application of harmless-error analysis here is more efficient than requiring, in conformity with 
Apprendi
, that a jury make the household-member determination. However, it is questionable whether this increased efficiency warrants the resulting encroachment upon the jury right. As Justice Scalia noted in 
Apprendi
:

“The founders of the American Republic were not prepared to leave [criminal justice] to the State, which is why the jury-trial guarantee was one of the least controversial provisions of the Bill of Rights. It has never been efficient; but it has always been free.” 
Apprendi
, 530 U.S. at 498, 147 L. Ed. 2d at 460, 120 S. Ct. at 2367 (Scalia, J., concurring).

Nevertheless, the decision in 
Neder
 says what it says, and absent a Supreme Court holding to the contrary, we are bound to follow 
Neder
.

We necessarily reject the dissent’s contention that 
Neder 
need not be followed. According to the dissent, 
Apprendi 
vitiated the prior decision in 
Neder
. However, 
Apprendi
 is silent regarding the harmless-error issue, and it makes no mention of 
Neder
. We decline to conclude, as the dissent urges, that 
Neder
 has been invalidated by 
Apprendi
. See 
Agostini v. Felton
, 521 U.S. 203, 237, 138 L. Ed. 2d 391, 423, 117 S. Ct. 1997, 2017 (1997) (reaffirming rule that it is the prerogative of the Supreme Court to overrule its own decisions).

Because of our disposition as to the household-member issue, it is unnecessary to address the propriety of the alternative basis for defendant’s sentence: the judicial finding that the victim was of a tender age. Defendant’s eight-year enhanced sentence may be upheld on the ground that Michael was a member of defendant’s household. While it was error for the trial court to base defendant’s enhanced sentence on the judge’s finding as to this element, this error, as noted, was harmless.

CONCLUSION

We conclude, as did the appellate court below, that it was a violation of 
Apprendi
 for the trial court to impose an enhanced sentence for involuntary manslaughter based on a judicial finding that the victim was a member of defendant’s household. This fact should have been proved to a jury beyond a reasonable doubt. However, given the overwhelming nature of the uncontradicted evidence in support of this element, we find this error harmless. Accordingly, we affirm the appellate court’s judgment that defendant’s enhanced sentence was imposed in error, but reverse the appellate court’s vacating of the sentence and remandment for a new sentencing hearing. We thus affirm the eight-year sentence imposed on defendant by the trial court.

Appellate court judgement affirmed

in part and reversed in part;

circuit court judgment affirmed

in part and reversed in part.

JUSTICE RARICK took no part in the consideration or decision of this case.

JUSTICE FREEMAN, specially concurring:

I agree with the majority’s conclusion that 
Apprendi
 claims are susceptible to harmless error analysis. I cannot fully join the majority because I do not believe that 
Neder
 and 
Apprendi
 are fundamentally at odds, a point on which the majority appears–at least to some extent–to agree with the dissent. I write separately to briefly set out the shortcomings in the argument presented by the dissent and to clarify why 
Apprendi
 and 
Neder
 are not in conflict.

First, it is clear that 
Apprendi
 did not 
directly
 overrule 
Neder
. 
Apprendi
 did not even mention 
Neder. 
In fact, 
Apprendi
 did not even mention the phrase “harmless error.” Moreover, 
Apprendi
 explicitly rejected the suggestion from the decision on review that there was “ ‘rarely any doubt’ ” regarding the fact proof of which was required by the statute under review. 
Apprendi
, 530 U.S. at 475, 147 L. Ed. 2d at 446, 120 S. Ct. at 2354-55, quoting 
State v. Apprendi
, 159 N.J. Super. 7, 25, 731 A.2d 485, 495 (1999). In so doing, the Court removed any question of harmless error in the case.

Because the Supreme Court has not explicitly overruled 
Neder
, we must proceed on the assumption that case remains good law. For even if 
Apprendi
 could be read as implicitly overruling 
Neder
–which it cannot, as I shall explain shortly–the Supreme Court has stated:

“We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent. We reaffirm that ‘[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, 
leaving to this Court the prerogative of overruling its own decisions
.’ [Citation.]” (Emphasis added.) 
Agostini v. Felton
, 521 U.S. 203, 237, 138 L. Ed. 2d 391, 423, 117 S. Ct. 1997, 2017 (1997).

Thus, the error of the dissent’s conclusion is clear.

And in any event, 
Apprendi
 and 
Neder
 are not in conflict, such that 
Apprendi
 could reasonably be said to have overruled the earlier case. The majority and the dissent both question how 
Neder 
and 
Apprendi
 can be reconciled. The bases for this concern are the statements in 
Apprendi
 that “constitutional protections of surpassing importance” were at stake in the case (
Apprendi
, 530 U.S. at 476, 147 L. Ed. 2d at 447, 120 S. Ct. at 2355), and the quote which is generally cited as the holding of that case: “Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. How, my colleagues question, can an 
Apprendi
 violation be harmless when the Supreme Court explicitly stated that proof of certain facts beyond a reasonable doubt to a jury is required by “constitutional protections of surpassing importance”?

First, the Court immediately names the “constitutional protections” to which it is referring: the due process clause of the fourteenth amendment and the sixth amendment jury trial guarantee. 
Apprendi
, 530 U.S. at 476, 147 L. Ed. 2d at 447, 120 S. Ct. at 2355. It is from these sources that the Court derives its conclusion that the facts undergirding the sentencing range must be proven to the jury beyond a reasonable doubt. Thus, I submit, what the Court has truly held in 
Apprendi
 is simply that the sixth amendment jury trial guarantee–made applicable to the states through the due process clause–extends to those facts necessary to establish the precise sentencing range within which the defendant’s sentence falls. The above quote–“Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt” (
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63)–is implicitly preceded by the phrase “The Sixth Amendment requires that.” The entirety of 
Apprendi
 is interpretation and application of the sixth amendment.

Thus, 
Apprendi
 cannot fairly be read as implicitly overruling 
Neder
, because the two cases are talking about related, but distinct, questions. The only subject under consideration in 
Apprendi
 is: To what facts does the sixth amendment jury trial right extend? By contrast, the question in 
Neder
 is: In the context of facts to which we 
know
 the sixth amendment jury trial right applies, can a violation of that right be harmless error? In other words, the questions addressed in the cases relate to different steps in the analysis of a defendant’s claim that his sixth amendment rights were violated because a particular fact or facts were not proven to the jury beyond a reasonable doubt. 
Apprendi
 relates to a threshold question in such a claim: Is the fact in question one to which the sixth amendment right attaches? If so, and if that fact was indeed not proven to the jury beyond a reasonable doubt, then there is a sixth amendment violation. 
Neder
 relates to a subsequent step: 
Given
 a violation of the sixth amendment jury trial right, can such a constitutional violation be 
harmless
? Succinctly, 
Apprendi
 deals with the 
scope
 of the sixth amendment jury trial right, while 
Neder
 deals with the 
effect
 of a violation of that right. Although both cases involve the sixth amendment, I respectfully suggest that there is no overlap between their subject matter. 
Apprendi
 violations are susceptible to harmless error review, in my reading of the cases, because what we label an “
Apprendi
 violation” is simply a specific 
type
 of violation of the sixth amendment jury trial guarantee–a violation with respect to facts establishing the applicable sentence. 
Neder
 has already held, however, that 
all
 violations of the sixth amendment jury trial guarantee are susceptible to harmless error review.

In the end, perhaps all my colleagues in the majority are saying is that it seems, for lack of a better word, 
peculiar
 for the Court to have labeled the sixth amendment jury trial guarantee one of “surpassing importance,” in 
Apprendi
, shortly after having held that a violation thereof is susceptible to harmless error review, in 
Neder
. In such an observation I would concur. However, the cases are not in conflict. Whatever one’s personal opinion might be with respect to the correctness of the Court’s decision in 
Neder
–a 5-4 decision with very strong dissents–neither 
Apprendi
 nor any other case has overruled it. So long as it remains the law of the land we are bound to follow it, unless we determine that there is a reason to depart lockstep and find that the Illinois constitution provides greater protection than the federal.

JUSTICE KILBRIDE, dissenting:

I respectfully dissent from the majority because I believe that removing an element of the crime from consideration by the jury can never be subject to a harmless error analysis. The case at bar presents this court with the same issue posed to the United States Supreme Court in 
Apprendi
: other than the fact of a prior conviction, whether 
every
 fact necessary to increase the penalty for a crime beyond the prescribed statutory maximum must be submitted to the trier of fact and proved beyond a reasonable doubt. In 
Apprendi
, the United States Supreme Court answered this question affirmatively. Today’s decision sharply departs from 
Apprendi
.

The majority acknowledges the State’s concession that it was an 
Apprendi
 violation for the trial judge to enhance defendant’s sentence based on a finding that the victim was a member of defendant’s household. Slip op. at 6. The majority circumvents 
Apprendi
 using 
United States v. Cotton
, 535 U.S. ___, 152 L. Ed. 2d 860, 122 S. Ct. 1781 (2002), and 
Neder v. United States
, 527 U.S. 1, 144 L. Ed. 2d 35, 119 S. Ct. 1827 (1999). Nonetheless, neither 
Cotton
 nor 
Neder
 justifies the conclusion drawn by the majority.

The United States Supreme Court’s holding in 
Cotton
 is not applicable to a harmless error analysis. In 
Cotton
, the defendant did not timely object to the State’s failure to allege enhancement factors in the indictment. Without a contemporaneous objection, the defendant waived his 
Apprendi
 argument. Thus, plain error was the only method for the 
Cotton
 defendant to invoke the 
Apprendi
 holding. In 
Cotton
, the United States Supreme Court specifically noted that “ ‘a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right.’ ” 
Cotton
, 535 U.S. at ___, 152 L. Ed. 2d at 869, 122 S. Ct. at 1787, quoting 
Yakus v. United States
, 321 U.S. 414, 444, 88 L. Ed. 834, 859, 64 S. Ct. 660, 677 (1944). In this case, defendant raised and preserved his 
Apprendi
 challenge at the earliest opportunity, the sentencing hearing. Accordingly, the present case is distinguishable from 
Cotton
.

Turning to 
Neder
, I am persuaded that Justice Scalia’s partial dissent in 
Neder
 (see 
Neder
, 527 U.S. at 30-40, 144 L. Ed. 2d at 60-66, 119 S. Ct. at 1844-48 (Scalia, J., concurring in part and dissenting in part, joined by Souter and Ginsburg, JJ.)) is embodied in the 
Apprendi
 holding and, thus, although 
Apprendi
 did not expressly overrule 
Neder
, the 
Apprendi
 holding is so fundamentally inconsistent with 
Neder
 that 
Neder
 can no longer be followed. I recognize, as does the majority and Justice Freeman’s concurring opinion, that it is the prerogative of the Supreme Court to overrule its own decisions. See 
Agostini v. Felton
, 521 U.S. 203, 237, 138 L. Ed. 2d 391, 423, 117 S. Ct. 1997, 2017 (1997). Nonetheless, that rule does not help to harmonize what Justice Freeman terms the “peculiar[ity]” between the 
Apprendi
 and 
Neder
 holdings. In my mind, the holdings are more than just peculiar. They are irreconcilable. After all, the question posed to the Court in both 
Neder
 and 
Apprendi
 was essentially the same: must 
every
 element of a crime be submitted to the trier of fact and proved beyond a reasonable doubt? In 
Neder
, the Court said “no.” After 
Neder
, in 
Apprendi
, the Court said “yes.” Left with the choice to follow one of two conflicting opinions of the Supreme Court, we quite simply should follow the most recent of the two.

In this post-
Apprendi
 case, the majority sanctions the removal of one element from consideration by the jury. What would the majority have done if, in this case, two elements had been taken away from the jury? What about three? Four? I cannot discern how “taking 
one
 of the elements of the crime away from the jury” is different from “taking 
all 
of them away–since failure to prove one, no less than failure to prove all, utterly prevents conviction.” (Emphases in original.) 
Neder
, 527 U.S. at 33, 144 L. Ed. 2d at 62, 119 S. Ct. at 1845 (Scalia, J., concurring in part and dissenting in part, joined by Souter and Ginsburg, JJ.). A directed verdict against a defendant would be 
per se
 reversible no matter how overwhelming the unfavorable evidence (
Rose v. Clark
, 478 U.S. 570, 578, 92 L. Ed. 2d 460, 471, 106 S. Ct. 3101, 3106 (1986)), and what the majority has done here is tantamount to affirming a directed verdict for the State. “[T]he fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receives–whether the statute calls them elements of the offense, sentencing factors, or Mary Jane–must be found by the jury beyond a reasonable doubt.” 
Ring v. Arizona
, 536 U.S. __, __, 153 L. Ed. 2d 556, 578, 122 S. Ct. 2428, 2444 (2002) (Scalia, J., concurring, joined by Thomas, J.).

There are some constitutional errors that involve rights so basic to a fair trial that their infraction can never be subject to harmless error analysis. See 
Chapman v. California
, 386 U.S. 18, 23, 17 L. Ed. 2d 705, 710, 87 S. Ct. 824, 827-28 (1967); 
Arizona v. Fulminante
, 499 U.S. 279, 308, 113 L. Ed. 2d 302, 330, 111 S. Ct. 1246, 1264 (1991). I believe that an 
Apprendi
 violation is the type of error that defies harmless error review. For these reasons, I would remand the cause for a new sentencing hearing. Therefore, I respectfully dissent.

FOOTNOTES
1:     
1
In the instant case, as previously set forth, the indictment included the fact that the victim was a family or household member of the defendant.