2016 IL App (1st) 141067

SECOND DIVISION
June 14, 2016

No. 1-14-1067

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 2777 |
| | ) | |
| LEONARD LINDSEY, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Neville concurred in the judgment and opinion.

**OPINION**

¶ 1     After a jury convicted defendant Leonard Lindsey of theft from a place of worship, a Class 4 felony, he was sentenced to an extended prison term of five years. On appeal, Lindsey contends that his conviction should be reduced to Class A misdemeanor theft because the place-of-worship sentence-enhancing factor was neither submitted to nor decided by the jury as required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000). We hold that the failure to submit to the jury the sentence-enhancing factor—that the charged theft was committed in a place of worship—was not harmless error where the State failed to prove beyond a reasonable doubt the result would have been the same absent the error. We affirm as modified.

¶ 3                                    BACKGROUND

¶ 4    Lindsey was charged by indictment with two counts of theft and one count of burglary. The State proceeded to trial on the burglary count and one count of theft charging him with the theft of candle fluid not exceeding $500 in value, the property of the Archdiocese of Chicago, "and said theft was committed in a place of worship, Saint Pius V Catholic Church." The evidence at trial relevant to the issue in this appeal follows.

¶ 4    Jorge Jarquin, a maintenance worker at St. Pius V Church, testified that on October 15, 2013, at about 2:30 p.m., he was assigned to pick up some boxes at the parish office. Jarquin knew the boxes contained liquid wax for the church candles, something the church ordered. Jarquin moved the boxes from the parish office to the sacristy in the church, which is a separate building. He described the building housing the parish office as part of the church; the office and the church shared the same address of 1919 South Ashland Avenue. Jarquin went to the basement of the church where food was being prepared for the food pantry. No church services were performed in the basement at that time. This was a Tuesday, when food was given to people in need. Jarquin saw Lindsey in the basement. He had seen Lindsey each month when food was given out. Lindsey approached Jarquin, showed him a bottle of the candle wax, and asked Jarquin if he wanted to buy it. Jarquin recognized the bottle as like the bottles in the boxes he had moved from the parish office to the sacristy earlier that day. Jarquin asked Lindsey where he got the bottle. Lindsey replied, "I found them around the block." Jarquin went to the office, watched the surveillance video, and recognized Lindsey on the video. He told Father Curran about Lindsey and the video.

¶ 5    Father Brendan Curran testified that he was the pastor of St. Pius V Church. He referred to the church "campus" as comprising the buildings along Ashland between 19th Street and Cullerton Street. The northernmost building, the church, is at 19th and Ashland. The southernmost building, at Cullerton and Ashland., was the school and parish office. The school was on the first floor, the parish office was on the second floor, and Father Curran's office was on the third floor. Another parish building stood between the church and the school/office building. The buildings were not interconnected. He described the buildings as the "Archdiocese parish," but other buildings in the block were not owned by the Archdiocese of Chicago.

¶ 6    Father Curran described his duties as largely administrative; he was "the executive director of the whole campus and operation." In addition to worship services, the church basement served as the school cafeteria and gym and also included a soup kitchen and food pantry. The school building accommodated an elementary school. The church also operated a parish youth center at 2020 South Blue Island Avenue as well as "a number of other programs at other sites."

¶ 7    Father Curran viewed the security camera system which is monitored at the office reception desk. The church itself and the properties belonging to the Archdiocese were under a surveillance system with "about 16 cameras overall on campus." These included surveillance cameras at the exit of the basement of the church on the south wall of the church, on the north side of the church, at the sidewalk by the entrance to the parish office, an inside camera at the entry level of the parish office, and cameras "going up our stairwell at the parish office on both the landing and at the main access on the second floor of the parish office."

¶ 8 After viewing the video surveillance system, Father Curran called 911. He then went to the basement of the church where he saw Lindsey coming out of the food pantry. They had a conversation. About 10 minutes after he spoke with Lindsey, the police arrived. By then Lindsey had left and was walking down the block. Father Curran pointed the officers toward Lindsey and they stopped him.

¶ 9 At trial, the prosecutor played a video compiled from three of the parish surveillance system cameras. The video was admitted in evidence and is part of the record on appeal, and we have viewed it. The video consists of the recordings from three of the church's surveillance cameras on the afternoon of October 15, 2013, from about 1:20 p.m. One camera was located outside the parish office building, showing the entrance door to the parish office; the second was inside the vestibule, showing the entrance door to the outside and the stairwell leading to the second-floor parish office; the third was on the second-floor landing outside the office reception area.

¶10 The videos showed that shortly after 1:20 p.m., a deliveryman entered the outer door of the parish office building with a handcart loaded with three boxes. Father Curran testified that the delivered boxes contained candle wax oil which was used to replenish the candles at the altars in the church. The boxes were the property of the Archdiocese of Chicago. Lindsey had no permission or authority to enter the church or remove the boxes of candle fluid. The video showed the deliveryman leaving the handcart and boxes in the vestibule and climbing the stairs to the parish office. A minute later the deliveryman returned, removed the handcart from beneath the boxes, and left. About half a minute after that, a man wearing a light-colored jacket, dark pants, and red baseball cap, entered the vestibule through the same door. Father Curran identified

that man as Lindsey. After entering the building, Lindsey climbed the stairs to the second floor. About four minutes later, Lindsey descended the stairs, paused to look at the stacked boxes, and left the building. Four minutes later, Lindsey re-entered the vestibule and climbed the stairs to the office again. About two minutes passed. Lindsey descended the stairs with his jacket in his left hand. In the vestibule, he immediately walked to the stack of boxes, threw his jacket over the top box, lifted up the top box with the jacket covering it, and went out the door with the box beneath the jacket under his right arm. The outside camera showed him walking down Cullerton toward Ashland.

¶ 11    After the State rested, the defense moved for directed verdict, which was denied. The defense rested without presenting evidence. After closing arguments, the jury was instructed on the theft and burglary counts. As to the theft count, the jury was given the definition instruction for theft pursuant to Illinois Pattern Jury Instructions, Criminal, No. 13.01 (4th ed. 2000): "A person commits the offense of theft when he knowingly obtains unauthorized control over property [of the owner, and] intends to deprive the owner permanently of the use or benefit of the property." The jury was also given a theft issues instruction pursuant to Illinois Pattern Jury Instructions, Criminal, No. 13.02 (4th ed. 2000), which stated in pertinent part:

> "To sustain the charge of theft, the State must prove the following propositions:
>
> [First:] That [Archdiocese of Chicago] was the owner of the property in question; and
>
> [Second:] That the defendant knowingly obtained unauthorized control over the property in question; and

[Third:] That the defendant intended to deprive the owner thereof permanently of the use or benefit of that property."

¶ 12    The jury was not asked to determine whether the theft occurred in a place of worship or in St. Pius V Catholic Church. The jury returned a guilty verdict on the theft count which stated: "We, the jury, find the defendant, Leonard Lindsey, Guilty of Theft." The jury also returned a verdict finding Lindsey not guilty of burglary.

¶ 13    The court sentenced Lindsey for a Class 4 felony based on its finding that the theft occurred in a place of worship. The court also imposed an extended five-year sentence (730 ILCS 5/5-4.5-45(a) (West 2012)) because Lindsey had committed the felony within 10 years of a prior burglary conviction (730 ILCS 5/5-5-3.2(b)(1) (West 2012)).

¶ 14                                  ANALYSIS

¶ 15    On appeal, Lindsey does not challenge his conviction for theft. His challenge is limited to the elevation of the crime from a Class A misdemeanor to a Class 4 felony, and his argument is two-fold. He contends that his conviction should be reduced to Class A misdemeanor theft because the alleged fact that the theft occurred in a place of worship was (i) not proved beyond a reasonable doubt and (ii) not submitted to the jury as required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

¶ 16    We begin our analysis with Lindsey's second argument, that the trial court erred in failing to instruct the jury on the sentencing-enhancing factor that the alleged theft occurred in a place of worship. We agree with Lindsey that the failure to so instruct the jury was error.

¶ 17    Theft of property not from the person and not exceeding $500 in value is a Class A misdemeanor. 720 ILCS 5/16-1(b)(1) (West 2012). The theft is a Class 4 felony, however, if

committed in a place of worship. 720 ILCS 5/16-1(a)(1)(A) (West 2012). The theft count charged that Lindsey committed the offense of theft in that he knowingly obtained unauthorized control over property of the Archdiocese of Chicago, namely, candle fluid not exceeding $500 in value, intending to deprive the Archdiocese of Chicago permanently of the use or benefit of the property, "and said theft was committed in a place of worship, Saint Pius V Catholic Church." As described in the indictment, the charge constituted a Class 4 felony.

¶ 18    The guilty verdict on the theft count stated simply that the jury found Lindsey guilty of theft. The jury was not instructed as to the sentence-enhancing factor; it was not asked to determine whether the theft occurred in a place of worship or St. Pius V Catholic Church.

¶ 19    The court sentenced Lindsey for a Class 4 felony based on its judicial finding that the theft occurred in a place of worship. *Apprendi* requires that any enhancement factor, other than a prior conviction, which "increase[s] the prescribed range of penalties to which a criminal defendant is exposed" be submitted to the jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. 466, 490 (2000). Accordingly, under *Apprendi*, Lindsey could not be subject to an enhanced sentence unless the jury had been instructed to find the theft occurred in a place of worship. That was not done. The court's judicial finding usurped the function of the jury to determine whether the enhancement factor existed. It was error for the judge and not the jury to determine that the theft occurred in a place of worship.

¶ 20    The State argues that no *Apprendi* violation occurred as the finding that the theft occurred in a place of worship was implicit in its verdict that Lindsey took property from the Archdiocese of Chicago. We disagree. As Lindsey stressed, property owned by the Archdiocese could include assets unrelated to places of worship.

¶ 21    We next address whether the *Apprendi* violation requires that we vacate the conviction for a Class 4 felony and reduce the charge to a Class A misdemeanor. In *People v. Thurow*, 203 Ill. 2d 352, 368 (2003), our supreme court held that an *Apprendi* violation was subject to harmless-error analysis. This requires that we consider Lindsey's first argument, whether the fact the theft took place in a place of worship was not proved beyond a reasonable doubt. Without that proof, elevation of the theft to a Class 4 felony would be impermissible. It is uncontested that the defense contended throughout trial that the theft did not occur in a place of worship. Immediately on sentencing and in a written motion to reconsider sentence, Lindsey contested the imposition of the enhanced sentence for what he argued was only a Class A misdemeanor. As Lindsey made a timely objection to the enhanced sentence, the trial court's failure to give the proper jury instruction is subject to harmless-error analysis. *Thurow*, 203 Ill. 2d at 363 (2003); *People v. Nitz*, 219 Ill. 2d 400, 414 (2006). Under that analysis, the State bears the burden of proving beyond a reasonable doubt that the result would have been the same absent the error. *Thurow*, 203 Ill. 2d at 363, 368-69; *accord Nitz*, 219 Ill. 2d at 413.

¶ 22    The State contends that the *Apprendi* violation was harmless because the evidence adduced at trial was sufficient to convince any rational trier of fact beyond a reasonable doubt that the theft occurred in a place of worship. Again, we disagree.

¶ 23    The Criminal Code of 2012 defines "place of worship" as "a church, synagogue, mosque, temple, or other building, structure, or place used primarily for religious worship and includes the grounds of a place of worship." 720 ILCS 5/2-15b (West 2012). The parties agree that the parish office and the church where services are conducted are wholly different structures.

Lindsey contends that the theft did not occur in a place of worship because it took place in the office building which did not function as a place used primarily for religious worship.

¶ 24    At trial, the State argued that the office building was the "church," not the church grounds. Now, the State responds that the statute specifically includes "the grounds of a place of worship" in its definition, that it was shown the theft occurred on church grounds, and that the theft need not have been shown to have occurred in the same building where religious services were held. We could consider the State estopped from raising this argument because the argument is a change of theory under which the case was tried. *People v. Major-Flisk*, 398 Ill. App. 3d 491, 500 (2010) ("A party is estopped from taking a position on appeal that is inconsistent with a position the party took in the trial court."). Nevertheless, we will address the issue as both parties briefed it.

¶ 25    Lindsey argues that "the office building is entirely distinct from the church and it cannot logically be construed as part of the grounds of the church." Citing a dictionary definition, Lindsey asserts that "grounds" as used in the statutory definition of "place of worship" refers only to the area around and belonging to a house or other building, and that here the office and church are separated by another building.

¶ 26    As noted, under a harmless-error analysis, the State bears the burden of proving beyond a reasonable doubt that the jury verdict would have been the same absent the error. *Thurow*, 203 Ill. 2d at 363. In cases where reviewing courts have held the *Apprendi* error harmless, the evidence was "uncontested and overwhelming" that the sentence-enhancing factor was proved beyond a reasonable doubt. See *Thurow*, 203 Ill. 2d at 369 (evidence that victim was member of defendant's household); *People v. Jones*, 219 Ill. 2d 1, 35-36 (2006) (evidence that murder

victim was 85 years old at time of his death); *People v. Walker*, 2015 IL App (1st) 130500, ¶ 28 (evidence that defendant was armed with firearm).

¶ 27    The question of whether the theft occurred in a place of worship was hotly contested throughout trial. Moreover, unlike the cases just cited where the issue was simple and the evidence of the enhancement factor was overwhelming, here resolution of the issue involves applying a complex set of facts to a statutory definition subject to conflicting interpretations by the parties. We are unable to conclude that it was so clearly evident that any rational trier of fact would be convinced beyond a reasonable doubt the theft occurred in a place of worship—that the *Apprendi* error can be deemed harmless.

¶ 28    While Lindsey does not contest that the evidence was sufficient to establish his guilt of theft, his Class 4 felony theft conviction is reduced to a Class A misdemeanor theft conviction with his sentence for that crime reduced to the maximum Class A penalty of 364 days. As Lindsey points out, remand for resentencing is unnecessary as he has already served more than 364 days for the theft conviction in the custody of IDOC. (Courts of review may take judicial notice of information that the Illinois Department of Corrections has provided on its website. *People v. McCurry*, 2011 IL App (1st) 093411, ¶ 7, n.1).

¶ 29    Affirmed as modified.