THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JASON C. OAKS, Defendant-Appellant.

Third District   No. 3—90—0647

Opinion filed June 27, 1991.

Michael L. Wassell, of Braud/Warner, Ltd., of Rock Island, for appellant.

Greg McClintock, State's Attorney, of Monmouth (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The defendant, Jason C. Oaks, was charged with home invasion and armed violence (Ill. Rev. Stat. 1989, ch. 38, pars. 12—11, 33A—2). A jury subsequently found him guilty of both counts. On the defendant's motion, the trial court vacated the conviction of armed violence. It thereafter sentenced him to 10 years' imprisonment. The defendant appeals.

At trial, witnesses testified that in Monmouth, Illinois, at approximately 6 p.m. on January 18, 1990, Mike Moore came to the back door of the home of Gladys Lester, the defendant's grandmother. When Lester answered the door, Moore indicated he was from the gas company. He then forced his way into her home, grabbed her, and used a stun gun on her chest. After Moore demanded money, Lester gave him some currency, including a quantity of change. Moore left shortly thereafter.

On January 19, 1990, in response to an anonymous telephone tip, Detective Owens of the Monmouth police department went to the defendant's residence. Owens spoke with the defendant, who subsequently gave him a stun gun he had recently purchased and agreed to go to the police station to talk. After being advised of his constitutional rights, he gave a written statement. In his statement, the defendant said that earlier in the day he had been with Ron Smith and that the two of them had gone to Moore's house, where they met Moore. Sometime later, the defendant and Moore dropped Smith off at someone else's house. Between 3 p.m. and 4 p.m., Moore and the defendant bought some beer and went back to Moore's house to drink. The statement indicated that at 5:05 p.m. the defendant went

to his girlfriend's place of employment. She appeared to have already left, so the defendant got some food and went back to Moore's house.

Other testimony showed that on January 20, 1990, Lester and the defendant went to the Monmouth police department. After looking at the stun gun taken from the defendant, Lester stated that it was not the one used on her.

The next day, however, the defendant wrote and signed a second statement indicating he had been aware of Moore's plan to burglarize Mrs. Lester's house. In his statement, he admitted he knew Moore had planned to take the stun gun. He also admitted driving Moore to his grandmother's house and waiting for him to return. After Moore returned, they went back to his house and then went to the Hy-Vee store to convert the change to paper money. At trial, the defendant claimed he had fabricated this second statement to protect his family, because Moore had threatened to harm them.

The defendant's girlfriend, Amy Johnson, testified that on the day of the crime she saw the defendant in Burlington, Iowa, around 5:15 p.m. She further noted that it takes 45 to 50 minutes to get from there to Monmouth.

In rebuttal, the State introduced a letter written by the defendant to Johnson. The letter essentially asked Johnson to fabricate an alibi for the defendant.

On appeal, the defendant raises three issues. First, he claims that the trial court erred in allowing the State to place in evidence letters he wrote while incarcerated in the Warren County jail awaiting trial. The defendant argues that although he was aware jail personnel would "shake down" letters, he did not believe they would read his outgoing mail. He claims that the seizure of the letters he wrote constituted an unreasonable search and seizure or a denial of free speech (U.S. Const., amends. I, IV; Ill. Const. 1970, art. I, §§4, 6).

■■ A pretrial jail inmate's right of free speech is not absolute, but must be weighed against the important governmental interests in regulating jail safety. (*Bell v. Wolfish* (1979), 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1861.) Federal courts have long held that letters written by a prison inmate while awaiting trial may be seized by prison officials pursuant to an established practice and may be introduced against the defendant at trial. (*Stroud v. United States* (1919), 251 U.S. 15, 64 L. Ed. 103, 40 S. Ct. 50.) Illinois courts have likewise concluded that a prisoner's letters may be admitted into evidence if the letters were taken pursuant to reasonable regulations and the prisoner had knowledge that prison officials might scrutinize them. *People v. Reddock* (1973), 13 Ill. App. 3d 296, 300 N.E.2d 31.

In the instant case, the defendant admitted that he had voluntarily written the seized letters and had given them to sheriff's personnel for mailing. Additionally, he admitted he left the letters unsealed so the sheriff's office could examine them. Testimony at trial also indicated that one reason the defendant's mail was inspected and read was because family members had indicated he was a suicide risk. We therefore hold that the trial court did not err in admitting the letters.

The second issue raised on appeal is whether the trial court erred in failing to allow the defendant to impeach a witness for bias by questioning him about the particulars of a prior felony conviction.

The State, on direct examination of its witness Ronald Smith, brought out that Smith had been previously convicted of second degree theft in Iowa. On cross-examination, defense counsel attempted to question Smith about the particulars of that conviction. The State objected, and the objection was sustained. The defendant now argues that he should have been allowed to impeach the witness for bias. He contends that it was his checks Smith used to commit the theft and that he would have testified against Smith if Smith had not pled guilty. The defendant concludes that if he had been allowed to question Smith about the particulars of the theft conviction, he could have shown bias and implied a reason why Smith would lie.

The scope of cross-examination concerning the circumstances of a witness' prior conviction is within the trial court's sound discretion. Absent an abuse of that discretion which results in manifest prejudice to the defendant, the ruling should not be overturned on review. *People v. Boclair* (1989), 129 Ill. 2d 458, 544 N.E.2d 715.

In the instant case, the trial judge originally decided to permit a limited inquiry by the defendant. However, the State suggested that such an inquiry would not produce evidence of bias. It indicated to the court that if Smith were questioned about the circumstances surrounding his theft conviction, he would testify that he and the defendant worked together to commit the thefts. He and the defendant would buy goods with bad checks, then return the goods to the store for a cash refund. The State informed the court that Smith was prepared to testify that his theft conviction was premised on falsely obtaining money from businesses, rather than for the theft of checks from the defendant.

Rather than conducting a trial within a trial and forcing the jury to decide the basis of Smith's conviction, the trial court excluded these collateral matters. We note that the jury was still in a position to judge Smith's demeanor and credibility based upon his testimony

as well as the substance of the cross-examination. Considering the totality of the circumstances, prohibiting the defendant from going into the particulars of the witness' prior conviction did not constitute an abuse of discretion by the trial court.

The defendant's final argument is that he was not proved guilty beyond a reasonable doubt. He claims the victim denied that the defendant's stun gun was used on her, the testimony of Smith and Moore conflicted in many aspects, he had no motive to commit the crime, and he had an alibi that was uncontradicted.

■ A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671.) It is axiomatic that the credibility of the witnesses and the weight to be afforded their testimony are determinations exclusively within the province of the jury. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) The relevant question for this court to address is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■ In the instant case, the defendant admitted in his second statement that he committed the offense. While at trial he denied the veracity of that statement, the jury was not required to believe him. Given the defendant's statement and the other evidence against him, we find that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of home invasion.

The judgment of the circuit court of Warren County is therefore affirmed.

Affirmed.

SLATER and McCUSKEY, JJ., concur.