THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL COLEMAN, Defendant-Appellant.

First District (6th Division)    No. 1—99—2714

Opinion filed March 5, 2004.

Rita A. Fry, Public Defender, of Chicago (Alison Edwards, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth McCurry, Alan Spellberg, and Marci Jacobs, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FITZGERALD SMITH[1] delivered the opinion of the court:

Following the death of his estranged wife, Marchelle Coleman, defendant Daniel Coleman was indicted on three counts of first degree murder (720 ILCS 5/9—1(a)(1) (West 1992)) and two counts of home invasion (720 ILCS 5/12—11(a)(1) (West 1992)). The State nol-prossed the home invasion counts and one of the murder counts. At trial, defendant waived his right to testify and presented no evidence. A jury found defendant guilty of the two remaining counts of first degree murder. The trial court, after determining that defendant's crime was exceptionally brutal and heinous in nature, sentenced defendant to a term of natural life in prison pursuant to section 5—8—1(a)(1)(b) of the Unified Code of Corrections (730 ILCS 5/5—8—1(a)(1)(b) (West 1998)).

Defendant appeals, claiming that the trial court erred in: (1) admitting evidence that defendant's wife wanted a divorce; (2) limiting the scope of defendant's cross-examination of the assistant State's Attorney who took defendant's custodial statement; and (3) failing, after defendant had expressly requested that the jury *not* be instructed on the lesser mitigated offense of second degree murder, to give such an instruction *sua sponte*. Defendant further claims that the trial court's imposition of an extended-term sentence of natural life imprisonment is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455, 120 S. Ct. 2348, 2362-63 (2000).

---

[1]Justice Judith Cohen wrote the original opinion disposing of this appeal. Upon Justice Cohen's retirement, Justice James Fitzgerald Smith substituted in her stead.

For the reasons that follow, we affirm defendant's conviction as well as his sentence.[2]

## ANALYSIS[3]

### I. Admissibility of Evidence

■ Defendant first argues that the trial court erred in admitting evidence that Marchelle intended to divorce him and leave the state. "The admissibility of evidence is within the sound discretion of the trial court, and its ruling will not be reversed unless there has been an abuse of that discretion." *People v. Williams*, 181 Ill. 2d 297, 313 (1998).

Prior to trial, the State made a motion *in limine* to determine the admissibility of evidence that Marchelle was separated from defendant for more than two years at the time of her murder and intended to divorce him and leave Illinois. The State sought to offer this evidence both in support of its theory that on February 27, 1997, defendant killed Marchelle in a homicidal rage when he discovered her plan and to rebut defendant's claim of self-defense. The State intended to call three witnesses—Vickie Hughes (Marchelle's sister), Lonnie Lewis (Marchelle's longtime Air Force supervisor) and Donnica Massie (Marchelle's best friend)—to support its theory. Each witness would offer essentially the same substantive testimony: that Marchelle had recently informed each of them that she had received approval to transfer from the Air Force facility at O'Hare Airport to Maxwell Air Force Base in Montgomery, Alabama, and that she intended to divorce defendant and "make a clean break." The State also intended to introduce a "to-do" list, written in Marchelle's handwriting and dated "2/97," on which "Get a divorce" was included as a long-term goal. A police forensic investigator recovered the list from the bedroom floor of Marchelle's apartment, only a few feet from where her body was discovered.

---

[2]In December 2003, the Illinois Supreme Court vacated our previous opinion in *People v. Coleman*, 328 Ill. App. 3d 688, 767 N.E.2d 388 (2002), *vacated* 206 Ill. 2d 623, 799 N.E.2d 677 (2003), with directions to reconsider our ruling regarding defendant's *Apprendi* contentions in light of that court's decision in *People v. Crespo*, 203 Ill. 2d 335, 788 N.E.2d 1117 (2001), *People v. Thurow*, 203 Ill. 2d 352, 786 N.E.2d 1019 (2003), *People v. Swift*, 202 Ill. 2d 378, 781 N.E.2d 292 (2002), and *People v. Kaczmarek*, 207 Ill. 2d 288, 798 N.E.2d 713 (2003). Having reviewed and considered all these cases, we now proceed under the court's directive with respect to that issue.

[3]A full recitation of the facts of this case is unnecessary to resolve the issues raised on review. Relevant facts will be discussed as needed throughout our analysis.

At a hearing on the State's motion *in limine*, defendant objected to the hearsay nature of both the proposed testimony and the list. The trial court overruled the objection, finding both the proposed testimony and the handwritten list to be admissible under hearsay exceptions to demonstrate defendant's motive and the victim's state of mind.

■ "Statements that indicate the declarant's state of mind are admissible as exceptions to the hearsay rule when the declarant is unavailable to testify, there is a reasonable probability that the proffered hearsay statements are truthful, and the statements are relevant to a material issue in the case." *People v. Caffey*, 205 Ill. 2d 52, 91 (2001). Hearsay statements offered not for the truth of the matter asserted but to demonstrate motive are similarly admissible when relevant. *People v. Heard*, 187 Ill. 2d 36, 66 (1999).

On appeal, defendant disputes the relevance of the State's evidence. Defendant argues that where the State presented no evidence either that defendant was present during any of the out-of-court conversations with Marchelle or was otherwise aware of Marchelle's intent to divorce him, such evidence was not relevant to demonstrate his motive.

■ Evidence is relevant if it has " 'any tendency to make the existence of any fact in consequence to the determination of the action more or less probable than it would be without the evidence.' " *People v. Hope*, 168 Ill. 2d 1, 23 (1995), quoting *People v. Peeples*, 155 Ill. 2d 422, 455-56 (1993). Defendant cites *People v. Singer*, 256 Ill. App. 3d 258 (1993), as authority for the proposition that absent proof he was aware of Marchelle's intent to divorce him, hearsay evidence of that intent is irrelevant and therefore inadmissible.

Defendant's reliance on *Singer* is misplaced. In *Singer*, the defendant killed three people: two employees who managed apartments in the building in which he lived and a third individual who attempted to intervene in the first two killings. At trial, the State called Toni Basille, a surviving employee of the building management office, to testify. Basille testified to multiple telephone conversations between the defendant and the victims regarding unpaid rent as well as to the management's decision to serve the defendant with an eviction notice. The purpose of this testimony was to establish the defendant's impending eviction as his motive for killing the management employees. *Singer*, 256 Ill. App. 3d at 264-65.

■ On appeal, the *Singer* court found this evidence to be inadmissible, not for lack of relevancy, but for lack of *foundation*. The court held:

"In the present case, the identity of the out-of-court declarant is not clear, because there is no evidence relating to who informed

Basille that there were multiple conversations between defendant and [the victims] regarding unpaid rents and that written notices were sent to defendant. Moreover, Basille was not present for any of the alleged telephone conversations except one. Since the declarant is unknown and the witness lacked personal knowledge, we find the statements regarding several alleged telephone conversations are inadmissible hearsay." *Singer*, 256 Ill. App. 3d at 265.

In the instant case, unlike the operant facts in *Singer*, the declarant (Marchelle) was known and the witnesses all testified from their own personal knowledge. *Singer* is of no help to defendant.

Defendant's reliance on *People v. Wilson*, 116 Ill. 2d 29 (1987), is similarly misplaced. In *Wilson*, the defendant killed two police officers who had stopped the car in which he was traveling. *Wilson*, 116 Ill. 2d at 32-33. In order to establish his motive for the killings, which was ostensibly to avoid arrest, the State presented an outstanding warrant for the defendant's arrest. However, the State introduced no evidence either that the defendant was aware of the warrant or that the officers had attempted to arrest him pursuant to the warrant. The court held that absent such a foundation, the mere existence of the warrant "[did] not establish anything about the defendant's state of mind." *Wilson*, 116 Ill. 2d at 52.

While we agree with defendant here that the State failed to present evidence that he was present for any of the disputed conversations, the record belies his contention that *no* evidence was presented that he was aware of Marchelle's intent to leave for Alabama and obtain a divorce. Photographs of the crime scene reveal that Marchelle's packed suitcase, her Air Force uniform and a travel kit containing toiletries were laid out on the living room floor next to the front door, the door defendant used to enter the apartment. Defendant admitted in his written confession that he followed Marchelle into the hallway leading to the living room. Two cigarette butts containing defendant's DNA were recovered from an ashtray within arm's reach of the suitcase. Marchelle's handwritten, dated "to-do" list, which included the notation "Get a divorce," was recovered from the floor of the bedroom only feet from where her body was found.

Marchelle's out-of-court statements to the witnesses regarding her plan, as well as the handwritten, dated "to-do" list, were relevant to demonstrate Marchelle's state of mind. *Hope*, 168 Ill. 2d at 23. The additional circumstantial evidence presented at trial was sufficient to establish a basis from which a reasonable jury could infer that defendant was aware of her plan, making the disputed evidence relevant both to suggest defendant's motive and to rebut his claim of self-defense. *People v. Robinson*, 189 Ill. App. 3d 323, 344 (1989). We

conclude that the trial court acted well within its discretion in admitting both the witnesses' testimony and the "to-do" list. *Caffey*, 205 Ill. 2d at 91. Defendant's challenge to the admissibility of this evidence fails.

## II. Scope of Cross-Examination

■ Defendant next argues that the trial court erred in sustaining an objection to a question defense counsel asked the assistant State's Attorney (ASA) who transcribed defendant's custodial confession. Defendant contends that counsel should have been allowed to ask the ASA on cross-examination whether the ASA had asked defendant if he had been angry during the entire episode of killing his wife. According to defendant, the ASA might have been shown on cross-examination to have an interest or bias in failing to provide him the opportunity to establish the partial defense of mitigation in his written confession.

Defendant acknowledges that he has waived the issue by failing to preserve his objection in a motion for a new trial (*People v. Enoch*, 122 Ill. 2d 176, 186 (1988)), but asks that this court review the issue as a matter of plain error. Plain error affecting a substantial right is an exception to the waiver rule. 134 Ill. 2d R. 615(a). "We will invoke the plain error rule in two limited circumstances: (1) where the evidence is closely balanced; or (2) where the errors are of such magnitude that defendant was denied a fair and impartial trial and remedying the error is necessary to preserve the integrity of the judicial process." *People v. Nieves*, 192 Ill. 2d 487, 502-03 (2000).

We decline defendant's invitation to invoke the plain error exception under the circumstances presented in this case. Defendant's argument "consists of explaining why the [trial court's ruling sustaining the State's objection] was error, not plain error. He neither argues that the evidence was closely balanced nor explains why the [asserted] error is so severe that it must be remedied to preserve the integrity of the judicial process." *Nieves*, 192 Ill. 2d at 503. Accordingly, the issue is waived.

## III. Jury Instructions

■ Defendant also argues that the trial court erred in failing to instruct the jury *sua sponte* on the lesser mitigated offense of second degree murder after he had specifically requested that such an instruction not be given. Once again, defendant acknowledges that he has waived the issue by failing to preserve it in a motion for a new trial (*Enoch*, 122 Ill. 2d at 186), and asks that we review the issue as plain error. Defendant argues that *People v. Carr*, 149 Ill. App. 3d 918 (1986), supports his position that the right to have the jury instructed on the elements of a lesser offense is a substantial right for purposes of plain

error review, and that the trial court's refusal to instruct the jury *sua sponte* on second degree murder, even over his own objection, mandates reversal.

We find *Carr* to be inapposite. *Carr* stands for the proposition that a trial court may not neglect to instruct a jury on a fundamental issue such that the jury lacks the necessary tools to determine whether the prosecution has carried its burden of proof as to the *charged offense*. *Carr*, 149 Ill. App. 3d at 930. Defendant in this case was charged with first degree murder. *Carr* cannot be read to support his contention that he had a substantial right to have the trial court instruct the jury *sua sponte* over his own objection on the lesser mitigated offense of second degree murder. As defendant has totally failed in demonstrating the necessity of plain error review, this issue is also waived. *Nieves*, 192 Ill. 2d at 503.

Defendant has similarly failed to preserve his alternative argument—that the trial court failed to explain to him the basis of the second degree murder instruction in adequate lay terms. This issue is thus waived as well. *Nieves*, 192 Ill. 2d at 503. Even had this alternative argument not been waived, however, we would have to find based on the record that the trial court, mindful of defendant's waffling on whether to request the second degree murder instruction, twice provided him in open court with an exhaustive explanation of both the nature of that instruction and its potential consequences. The trial court further verified that defense counsel had discussed the instruction with defendant on no fewer than six separate occasions, one such occasion on the record. The trial court went so far as to ask defendant three times whether his decision not to submit the second degree murder instruction to the jury was final, each time receiving an affirmative response from him. We would therefore hold that the trial court's explanation of the instruction was indeed adequate and that defendant's argument on appeal in this respect is without merit.

## IV. *Apprendi*

Finally, defendant contends that his extended sentence of natural life imprisonment is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455, 120 S. Ct. 2348, 2362-63 (2000). He argues that the sentencing range for first degree murder is 20 to 60 years and that the imposition of a sentence in excess of that range, as he received here pursuant to section 5—8—1(a)(1)(b), requires proof to a jury beyond a reasonable doubt of any factors upon which the sentence was based. Because the trial court made a determination to invoke an extended-term sentence rather than submit this determination to a jury, defendant claims his life sentence must be vacated. While we agree with his statements of the law with

respect to *Apprendi*, we disagree with defendant's conclusion that his sentence must be vacated.

In *Apprendi*, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. In light of this, in *People v. Swift*, 202 Ill. 2d 378 (2002), our state supreme court examined the applicability of section 5—8—1(a)(1)(b) of our Unified Code of Corrections, which allows a trial court to sentence a defendant convicted of first degree murder to a term of natural life imprisonment, rather than within the set statutory range of 20 to 60 years, upon a finding that the murder was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." 730 ILCS 5/5—8—1(a)(1)(b) (West 1998). The *Swift* court held that the "only range of sentence permissible" for first degree murder based on an ordinary jury verdict of guilt is 20 to 60 years' imprisonment; any sentence in excess of this range requires additional factual findings which, pursuant to *Apprendi*, must be proven to a jury beyond a reasonable doubt. *Swift*, 202 Ill. 2d at 392 (80-year sentence for first degree murder based on factual finding that crime was brutal and heinous could not stand where this finding was made by trial judge on preponderance of evidence burden, rather than by jury on proof beyond reasonable doubt burden).

In the instant case, defendant was sentenced to natural life imprisonment under section 5—8—1(a)(1)(b) upon a factual finding by the trial court that he committed the murder of Marchelle in a brutal and heinous manner. Clearly, after *Swift*, this enhanced sentence violates the principles of *Apprendi*.

However, several recent cases from our supreme court addressing this very issue have made equally clear that while an *Apprendi* violation of this kind is error, it is not automatically a "structural error" requiring vacation and resentencing. *People v. Crespo*, 203 Ill. 2d 335, 347 (2001); see also *People v. Kaczmarek*, 207 Ill. 2d 288, 302 (2003); *People v. Thurow*, 203 Ill. 2d 352, 371-72 (2003); accord *People v. Vida*, 339 Ill. App. 3d 115, 117-18 (2003). Rather, our supreme court has held that, depending on certain circumstances, a defendant's sentence that exhibits an *Apprendi* error can well be affirmed without modification. See *Crespo*, 203 Ill. 2d at 347-48, and *Kaczmarek*, 207 Ill. 2d at 302 (using plain error analysis and upholding extended-term sentence); see also *Thurow*, 203 Ill. 2d at 363 (using harmless error analysis and upholding extended-term sentence); *cf. Vida*, 339 Ill. App. 3d at 118 (using both analyses to reinstate extended-term sentence).

The key inquiry in each case is whether the defendant objected at the time of trial or sentencing to the court's determination of the factor that resulted in the enhancement of his sentence (*i.e.*, that the murder was committed in a brutal and heinous manner) and its failure to submit this determination to the jury. See *Crespo*, 203 Ill. 2d at 347; accord *Thurow*, 203 Ill. 2d at 363. The difference is "important," as one of two distinct analyses would then apply. *Crespo*, 203 Ill. 2d at 347; *Thurow*, 203 Ill. 2d at 363. If the defendant made a timely objection, a harmless error analysis would apply, placing the burden on the State to prove that the jury verdict would have been the same absent the error. See *Crespo*, 203 Ill. 2d at 347 (State must prove this to prevent reversal); accord *Thurow*, 203 Ill. 2d at 363 (State must persuade that no prejudice was suffered). In contrast, if the defendant failed to make a timely objection, a plain error analysis would apply, placing the burden on him to prove that the error was prejudicial. See *Vida*, 339 Ill. App. 3d at 117 (failure to raise *Apprendi* objection at time of trial results in application of plain error test); see also *Crespo*, 203 Ill. 2d at 347-48 (sentence will stand if the defendant cannot prove error was prejudicial); accord *Thurow*, 203 Ill. 2d at 363 (the defendant must persuade that prejudice occurred, or else appellate court cannot correct error).

■ Upon review of the record in the instant case, we find an apparent failure on the part of defendant to object at any time during his trial, sentencing or hearing on motion to reconsider sentence, either orally or in writing, to the court's determination that he committed the murder in a brutal and heinous manner rather than submitting this determination to the jury. Accordingly, we must employ a plain error analysis. As noted earlier, before we, as a reviewing court, may correct an unpreserved error raised only after trial has been completed, there must be (1) an error, (2) that is "plain," and (3) that affects the defendant's substantial rights. See *Crespo*, 203 Ill. 2d at 348. If the defendant provides evidence to meet these conditions, then we may exercise our discretion and choose to address the forfeited error, but only if that error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Crespo*, 203 Ill. 2d at 348, quoting *United States v. Cotton*, 535 U.S. 625, 631, 152 L. Ed. 2d 860, 868, 122 S. Ct. 1781, 1786 (2002). In cases, such as the instant one, where the error comprised an extended sentence based upon a factual determination by the trial court (rather than the jury) that the crime was committed in a brutal and heinous manner, it has been held that the existence of a record providing overwhelming evidence that the crime was indeed committed in this manner will defeat the defendant's claim of prejudice and,

thus, will defeat a finding of plain error. See *Kaczmarek*, 207 Ill. 2d at 302-03 (supreme court held that overwhelming evidence found in record that the defendant committed the murder in brutal and heinous manner showed that he could not demonstrate prejudice for purposes of plain error analysis); accord *Crespo*, 203 Ill. 2d at 348-49 (based on review of record showing overwhelming evidence of brutality and heinous behavior, supreme court held that "there is no basis for concluding that the *Apprendi* violation" would qualify for plain error analysis).

■ We conclude that under the plain error analysis, defendant cannot demonstrate that he was prejudiced by the absence of a jury finding that his conduct was exceptionally brutal and heinous. Our supreme court has defined "brutal" and "heinous" behavior as those acts that are "grossly ruthless," "devoid of mercy," "shockingly evil" and "flagrantly criminal." *Kaczmarek*, 207 Ill. 2d at 303. Defendant's detailed confession, as well as the other physical evidence presented at trial, clearly demonstrates that the senseless, vicious murder of this young woman and armed forces recruit by means of blunt force trauma, strangulation, stabbing and burning to prevent her from leaving the state and obtaining a divorce undoubtedly qualifies as brutal and heinous behavior on defendant's part. Defendant described how he fought with Marchelle and removed a knife from her hands, how he threw her against the wall several times, how he choked and tied her up, and how he slashed her throat repeatedly. He also told police that he cleaned her blood from his clothes, took the knife from the scene, and had breakfast after the murder with his landlady.

Evidence presented by the State throughout the trial corroborated defendant's confession. Police recovered telephone answering machine tapes from the day of the murder upon which Marchelle could be heard stating that defendant had arrived at her apartment and beginning a conversation with him. Marchelle's packed suitcase and uniform were found in the living room near the front door, where defendant entered the apartment. Two cigarette butts containing defendant's DNA lay in an ashtray next to the suitcase. Marchelle's note indicating that she intended to divorce defendant was found only a few feet from her body.

Most significantly, Marchelle was found sprawled on her bed with her arms pinned underneath her, her legs spread, and her night stand lying next to her. The forensic investigator testified that a "goodly amount of blood" was deposited throughout her apartment: on the front door and in her hallway, bathroom and bedroom. The bed was soaked with her blood, and two claw hammers were found on the floor

covered in her blood. There were hemorrhages and lacerations on her head, indicating at least one or two blows with a blunt object. Marchelle's body (including her chest, breasts, abdomen and thighs) was covered with linear abrasions from a knife being dragged across her skin. Marchelle's throat had been cut at least three times in a manner indicating that the knife had been dragged repeatedly across her neck, with an incision so deep that it cut through her skin, neck muscles, jugular veins, larynx and almost exposed her spinal column. There were several defensive cuts to both of her hands, one so profound that it literally cut through her wrist bones. In addition, Marchelle had burnt ash on her back, and hair evidence indicated that she had been burned in her pubic area as well.

On the basis of this overwhelming evidence that the crime was brutal and heinous, there is no basis for concluding that the *Apprendi* violation "seriously affected the fairness, integrity or public reputation of" the judicial proceedings conducted against defendant in the instant case. We have no doubt that a jury, presented with these facts, would have found that the crime was committed in a brutal and heinous manner. Defendant has failed to show that the sentencing error here was prejudicial.

Accordingly, although the procedure followed by the trial court in sentencing defendant did violate *Apprendi* principles in that the court made a factual determination which should have been left for the jury, we conclude that this error did not rise to the level of plain error, and thus, defendant's sentence of natural life must stand.

The argument may be asserted that because defendant was tried and sentenced before *Apprendi* was decided, his failure to object and adequately preserve the *Apprendi* violation for our review should not count against him. However, even if defendant had been sentenced after *Apprendi* and had the opportunity to preserve the issue properly, thereby requiring us to proceed under a harmless error analysis, we would conclude that the trial court's error in failing to submit the brutal and heinous determination to the jury was harmless. The applicable test for harmless error in the instant case is whether it appears " 'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " *Thurow*, 203 Ill. 2d at 368-69, quoting *Neder v. United States*, 527 U.S. 1, 18, 144 L. Ed. 2d 35, 53, 119 S. Ct. 1827, 1838 (1999). Based on the overwhelming evidence just detailed above, the State clearly could prove beyond a reasonable doubt that any rational jury would have found defendant guilty of Marchelle's brutal and heinous murder, regardless of the *Apprendi* error.

278

## CONCLUSION

For the foregoing reasons, we affirm both defendant's conviction as well as his sentence of natural life in prison.

Affirmed.

O'MALLEY,[4] P.J., and TULLY, J., concur.

---

[4]Justice William Cousins, Jr., was a member of the original panel in the instant cause. Upon Justice Cousins' retirement, Justice Denise O'Malley substituted in his stead.