2016 IL App (1st) 140785

THIRD DIVISION
June 1, 2016

No. 1-14-0785

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 13 CR 15882 |
| | ) | |
| TYRELL GIBBS, | ) | Honorable |
| | ) | Matthew Coghlan, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Fitzgerald Smith and Lavin concurred in the judgment and opinion.

## OPINION

¶ 1        Following a 2014 jury trial, defendant Tyrell Gibbs was convicted of one count of

aggravated battery against David Winters, for which he was sentenced to two years of felony

probation and 40 hours of community service.  On appeal, Gibbs raises numerous contentions of

error beginning with the trial court's denial of his motion for a three-week continuance on the

day of trial. He next contends that the court erred in excluding live testimony of Winters' prior

conviction for domestic battery and excluding as hearsay the responding officers' testimony

regarding their interviews with Gibbs, his girlfriend, and the victim.  Finally, Gibbs argues that

the court erred in its answer to the jury's question on the permissible use of force in defense of

property.   Finding no error, we affirm.

¶ 2                                    BACKGROUND

¶ 3        On August 13, 2013, Gibbs and his girlfriend, Tameshia Hoard, were charged with armed robbery, aggravated unlawful restraint, and three counts of aggravated battery arising out of the beating and robbery of David Winters on July 24, 2013.  Gibbs was initially represented by the Office of the Cook County Public Defender, but later hired private counsel, who entered his appearance in November 2013 and indicated that he intended to pursue self-defense as an affirmative defense.  At that time, counsel subpoenaed all photographs, inventory slips, documents, reports and records relating to Gibbs' arrest on July 24.

¶ 4        In court on December 2, 2013, Gibbs acknowledged receipt of "reports, inventories, GPR's, and OEMC records."  Specifically, the arrest report he received reflected that arresting officers recovered proceeds from the crime, which were given inventory number 12960723, as well as prisoner property inventoried under number 12960724.  Inventory sheet number 12960723 was attached to the report and indicated that a black iPhone 3 was recovered from Gibbs.  The State informed the court that other than discovery relating to a 911 call, it believed discovery was complete.

¶ 5        At the next court date on January 9, 2014, Gibbs filed a written demand for a bench trial, and pursuant to the State's motion, trial was scheduled for February 14.  On the scheduled trial date, Gibbs informed the court that due to codefendant Hoard's plea of guilty that same day, he was seeking a jury trial, but remained ready to proceed that day.  The State, however, was not ready to proceed, and the matter was continued to February 18 on the State's motion.

¶ 6        On Tuesday, February 18, Gibbs informed the court that the State had tendered additional discovery over the weekend in the form of six photographs of him taken at the time of booking, as well as inventory sheet number 12960724 reflecting that he was in possession of two

additional cell phones when he was arrested. Due to this late-tendered discovery, Gibbs believed the State's case was "a little stronger" than previously assessed, and sought a one-month continuance to "reprioritize and rethink" his trial strategy. Specifically, he wished to tender additional character witnesses and locate evidence tending to show Winters' violent nature. Gibbs also contended that Hoard's plea was a "major change" given that he had assumed she would testify consistently with the statements she gave to police after her arrest, which he said corroborated his own statements. The court denied Gibbs' request, pointing out that he was on notice of the missing inventory report given the reference to it in the State's discovery response and that the photographs were cumulative of other evidence the State planned to introduce. However, when the case was re-called that afternoon, the court stated that due to the lateness of the hour, it would hold the case until Thursday, February 20, when it would pick a jury. Gibbs again requested an additional week, which the court denied.

¶ 7        On February 20, Gibbs renewed his motion for a continuance, arguing that the newly received photographs were potentially inculpatory, as they revealed he suffered very few wounds, which contradicted his theory of self-defense. Gibbs further argued that he was unaware that in addition to the victim's black iPhone 3, the police recovered two other cell phones from him. He explained that while the arrest report referenced an additional inventory sheet (number 12960724), it was not returned on his subpoena. Gibbs concluded that the increased strength of the State's case stemming from this new discovery required him to pursue evidence of Winters' propensity for violence in an attempt to bolster his case. According to Gibbs, he had retained an investigator who would need three weeks to gather propensity evidence.

¶ 8        The court denied the motion on the ground that Gibbs was on notice of the existence of the evidence of the phones and photographs for several months and that notwithstanding his

claim of self-defense, he had made a "strategic decision" over the preceding months not to pursue propensity evidence. The court went on: "It strikes me as a desire to delay now that the State has answered ready, and they have their complaining witness here in court. It's not a game where you can answer ready, demand trial, knock some time off the term, and then request a continuance once the State answers ready."

¶ 9 The court then heard arguments on motions *in limine*, including Gibbs' motion to exclude the late-tendered discovery, which the court denied. Gibbs also moved to allow the arresting officers to testify about the statements he, Winters, and Hoard made at the time of the incident. Gibbs argued that this was not hearsay and would be introduced to show the course of the officers' investigation and the effect of the statements on the officers. The court denied the motion as an attempt to introduce exculpatory statements by Hoard. Finally, Gibbs moved to introduce evidence of prior violent acts by Winters in the form of a 14-year-old conviction for domestic battery and over 25 arrests for violent crimes. The court allowed Gibbs to question Winters about his battery conviction, but excluded evidence of the arrests. The State sought clarification on the court's order and asked the court to limit evidence of Winters' domestic battery conviction to a certified copy of his conviction and exclude testimony regarding the underlying facts. Gibbs objected, but the court granted the State's motion and forbade Gibbs from asking Winters about the conviction.

¶ 10 The jury trial began the following day on February 21. The State called Winters as its first witness, who began by admitting that he had two misdemeanor assault cases pending in Minnesota on which there was an outstanding warrant. However, he denied that he had been promised anything for his testimony in the instant case.

¶ 11      Winters admitted that during the day of the incident, July 24, 2013, he drank alcohol and used cocaine. At midnight, he was on the phone with his daughter while walking down Farwell Street in Chicago. At approximately 12:45 a.m., he noticed a man and a woman on the street, and the woman approached him asking for "a light." He disconnected his call and proceeded to light the woman's cigarette. As he walked away, he was hit in the head, and turned around to see the man, whom he identified in court as Gibbs, holding a brick. Winters and Gibbs then began struggling, and Gibbs called for the woman to help. She scratched at Winters' face while Gibbs pulled Winters' fleece over his head. Winters felt pain in his face and ran away from the couple; as he ran, he called the police. Gibbs continued to chase Winters, and when Winters tripped, Gibbs hit him once again with the brick. When Winters regained consciousness, he did not see his phone, but he saw Gibbs and the woman running back toward Farwell Street. Police arrived to help Winters, and brought Gibbs and the woman back to him, where he positively identified them as his attackers. Later, Winters was transported to the hospital, where he was treated for his head injury.

¶ 12      On cross-examination, Gibbs asked Winters if he had been convicted of domestic battery, but the State's objection to this question was sustained.

¶ 13      Officer Terrance Fowler of the Chicago police department was on patrol with his partner in the early morning hours of July 24, 2013 when they received a call about a battery in progress. The caller stated that he saw a man and woman in dark clothing beating a man in a white T-shirt near Clark and Farwell Streets. When Officer Fowler neared that location, he observed a man and woman running northbound on Clark Street. The officers stopped the couple, and the man, identified in court as Gibbs, had blood on both arms as well as on his black T-shirt. Gibbs told Officer Fowler that the blood was "the other guy's." Officer Fowler observed that Gibbs' sole

injury was a cut on his right hand.  Officer Fowler then communicated via radio that he had possibly apprehended the offenders, whereupon he learned that other officers had located Winters nearby.  Officer Fowler walked Gibbs and the woman to the victim's location where the victim, who was lying on the ground with blood on his head, identified the couple as his attackers.  Before placing Gibbs in custody, Officer Fowler conducted a custodial search and retrieved a black iPhone 3, which Winters said belonged to him, as well as two other cell phones, one of which was also an iPhone.  All phones as well as other items found on Gibbs were inventoried.

¶ 14     Gibbs' testimony differed from that offered by Officer Fowler and Winters.  According to Gibbs, on July 23, 2013, at around 10 p.m., Hoard, the mother of Gibbs' son, arrived at his mother's house. Shortly thereafter, Gibbs and Hoard set off for the Metra station in the Rogers Park neighborhood of Chicago, which was approximately one hour away from Gibbs' mother's house so that Hoard could return home.  Gibbs and Hoard arrived at the train station at midnight and discovered that Hoard had missed the last train, at which point the couple decided to go to their friend Lorenzo's house.  On their way, Hoard stopped a man on Clark Street and asked him to light her cigarette.  Gibbs and Hoard continued to Lorenzo's house, but Lorenzo did not answer the door.

¶ 15     Gibbs and Hoard then walked back towards Clark Street when the same man whom Hoard asked for a light said he was a police officer and told them to put their hands up.  Gibbs smelled alcohol on the man's breath and asked to see his badge, but the man wrapped his hands around Gibbs' neck.  Gibbs fought with the man, who was pulling his hair.  (Gibbs identified scratches on his forehead from the fight in a photograph taken shortly after the encounter.)  Gibbs asked Hoard to help, and Hoard slapped the man, who punched her in the face.  Gibbs also

identified Hoard's photograph revealing a black eye. Hoard and Gibbs were both on the ground when the man took Hoard's phone, which had fallen out of her pocket, and fled. Gibbs gave chase, but the men both tripped and began fighting once again. As the man was hitting him, Gibbs located a brick on the ground and hit him in the head. The man fell, and Gibbs noticed Hoard's phone as well as an iPhone on the ground that he believed belonged to him. Gibbs took both phones and ran back to Hoard, instructing her to run. Approximately two minutes after they fled, the police stopped and questioned them as Officer Fowler testified.

¶ 16 Rosia Carter and Bob Montgomery, both of whom had known Gibbs for over eight years, testified to his peaceful nature. Carter, who works for an educational resource program founded by Montgomery, testified that she placed Gibbs as a youth director at an elementary school and found him to be peaceful and well-mannered. Montgomery echoed Carter's testimony.

¶ 17 The parties then entered several stipulations, one of which was Winters' conviction for domestic battery in 2000.

¶ 18 Following closing argument, the jury was instructed on the elements of armed robbery and aggravated battery. During deliberations, the jury sent out numerous questions, one of which asked "once property is no longer in the possession of the defendant, is the defendant justified in using force to reobtain his property or is it just when the defendant is in possession of that property?" Attached to the question was the instruction reading: "A person is justified in use of force to prevent another person's interference with personal property lawfully in his possession." The State suggested the court inform the jury that it had all the instructions and it should continue to deliberate, while Gibbs' counsel suggested the answer should be 'yes,' to which the State objected. Counsel then stated: "Well, I mean I'm not – that's all you send back to them. Or you have the jury instructions. Continue [] deliberating." The court then offered that the

answer could be 'yes' if the defendant "reasonably believes that such conduct is necessary to prevent another's wrongful interference with personal property lawfully in his possession." Gibbs' counsel stated he had no problems with "[the court's] instruction or [the court's] answer," but the court ultimately concluded that its suggested answer was improper and said it would answer that the jury should refer to its instructions and continue deliberations. Gibbs did not object.

¶ 19    Ultimately, the jury found Gibbs not guilty of armed robbery, but guilty of aggravated battery on a public way.

¶ 20    Gibbs moved for a new trial, arguing, in relevant part, that the court should have permitted a three-week continuance so that he could obtain evidence of Winters' violent nature. As support for this argument, he produced 30 reports of Winters' arrests for crimes such as aggravated criminal sexual assault, battery, armed robbery, and assault. Gibbs also introduced his investigator's report, in which his investigator recounted an interview with Winters' former girlfriend, Sherrie Macon. Macon, who was the victim in Winters' 1994 arrest for battery, told the investigator that Winters abused her throughout their six-year relationship. In September 1994, Winters broke into Macon's apartment and began choking her, and when Macon's screams alerted security, Winters fled and was captured under a car. Macon did not press charges on this or other occasions in which Winters attacked her. She and Winters have two children together but do not talk regularly.

¶ 21    The court denied Gibbs' motion for a new trial and sentenced him to two years of probation and 40 hours of community service.

¶ 22                                ANALYSIS

¶ 23　　We turn first to the trial court's decision to deny Gibbs' motion for a continuance on the day of trial, which we review for an abuse of discretion. *People v. Weeks*, 2011 IL App (1st) 100395, ¶ 30. A trial court abuses its discretion when its ruling is " 'arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *Id.* (quoting *People v. Hall*, 195 Ill. 2d 1, 20 (2000)).

¶ 24　　On February 18, the day trial was scheduled to begin, Gibbs requested a continuance in order to obtain witnesses who could testify to Winters' violent nature. The trial court queried why Gibbs had not yet obtained such evidence, given that in his answer of January 9, 2014, he had raised self-defense as an affirmative defense. Gibbs explained that two events motivated him to change his trial strategy: (1) the unexpected unavailability of Hoard due to her plea agreement on February 14; and (2) the State's recently tendered discovery, in the form of booking photographs of Gibbs and an inventory sheet reflecting that Gibbs was in possession of two additional phones at the time of his arrest. According to Gibbs, he had hoped that Hoard would testify consistently with Gibbs' account of the events, and was planning to highlight their corroborative accounts as evidence that Gibbs was acting in self-defense, but given her plea, as well as the new discovery, Gibbs now wanted to emphasize Winters' history of violence to bolster his argument.

¶ 25　　When a continuance is requested to obtain additional evidence, the court should consider the defendant's diligence, along with whether (i) the testimony was material and might have affected the jury's verdict, and (ii) defendant was prejudiced. *People v. Ward*, 154 Ill. 2d 272, 304 (1992). Here, the court's decision to deny the motion for continuance rested on Gibbs' earlier demand for trial as well as his lack of diligence in pursuing his defense.

¶ 26    We first note that the court's consideration of the fact that Gibbs had answered ready for trial prior to asking for a continuance was not improper. See, *e.g.*, *People v. Davis*, 147 Ill. App. 3d 800, 803 (1986) (considering fact that defendant had previously demanded trial in holding that trial court did not abuse discretion in denying motion for continuance to obtain alibi witness).

¶ 27    But more significantly, the court's conclusion that Gibbs did not act diligently is amply supported by the record. While Gibbs argues that his failure to pursue a defense based on Winters' violent criminal history was based on Hoard's unexpected "unavailability" and the late-tendered discovery, there is no evidence that either event was a surprise requiring a change in trial strategy. Indeed, with regard to Hoard's plea, Gibbs learned that Hoard pled guilty on February 14, 2014, the day the case was originally set for trial. On that day, Gibbs' only request was a change from a bench to a jury trial. Specifically, he stated, "in light of the plea that was just made by the co-defendant, [ ] we are asking for a jury trial. *We are ready to go, though.*" (Emphasis added.) When the State said that it was not ready to proceed, the court agreed to continue the matter until February 18 and asked if that was by agreement, to which Gibbs responded in the negative, saying he was "continuing the demand." It is evident from this exchange that Gibbs knew on February 14 that corroborative testimony from Hoard would be unavailable given her guilty plea and that he was nonetheless prepared to proceed to trial that day, thus belying his claim on appeal that Hoard's guilty plea prompted a wholesale reevaluation of his trial strategy. Moreover, there is no evidence supporting Gibbs' contention that Hoard would have testified consistently with his account of events, which further undercuts his claim of surprise.

¶ 28    Nor could the late-tendered discovery have prompted Gibbs to reconsider his trial strategy, as Gibbs could not have been surprised by either the photographs or the inventory report. First, Gibbs, as the subject of the photographs, was necessarily aware of their existence. Likewise, Gibbs knew that police confiscated three phones, and not one, from him at the time of his arrest. Moreover, Gibbs' counsel was in possession of the arrest report which indicated that prisoner property was inventoried at number 12960724. Gibbs did not receive this inventory sheet on his subpoena, but nevertheless represented that he was ready to proceed. Having demanded trial with knowledge that discovery was missing, he cannot now contend that receipt of the missing discovery surprised him and justified a continuance to reevaluate his trial strategy. In sum, the court was not unreasonable in determining that Gibbs' failure to pursue a strategy emphasizing Winters' criminal history reflected a lack of diligence that could not be excused by his allegations of surprise. This is particularly true where, as part of discovery (and months prior to trial), Gibbs was provided with Winters' criminal history report reflecting dozens of arrests for alleged crimes of violence. And because Gibbs failed to act diligently in pursuing this defense, we conclude that the trial court did not abuse its discretion in denying Gibbs a three-week continuance on the day of trial.

¶ 29    Furthermore, the jury's acquittal of Gibbs on the armed robbery charge leads us to conclude that the jury believed, as Gibbs testified, that Winters was the initial aggressor, but the jury likewise concluded that Gibbs' conduct in chasing Winters and hitting him with a brick in order to retrieve Hoard's cell phone supported the aggravated battery charge. This being the case, additional evidence of Winters' violent nature would have had little, if any, effect on the latter conviction. Therefore, the denial of a continuance to pursue additional evidence of Winters' propensity for violence did not prejudice Gibbs.

¶ 30    To the extent that Gibbs argues that the late-tendered discovery alone was a basis for the trial court to grant a three-week continuance, we disagree. Significantly, the trial court *did* grant Gibbs a two-day continuance to review the discovery. Furthermore, in order to demonstrate entitlement to a continuance for a discovery violation, it is the defendant's burden to show not only surprise, but prejudice. *People v. Heard*, 187 Ill. 2d 36, 63 (1999). Gibbs has not met this burden here, as the discovery was cumulative to Officer Fowler's testimony. See *People v. Dial*, 95 Ill. App. 2d 345, 358 (1968) (no prejudicial error in allowing presentation of cumulative evidence). Specifically, Officer Fowler testified that, as the photographs reflected, Gibbs' only injury was to his hand, and that, consistent with inventory sheet number 12960724, he recovered three cell phones from Gibbs. Thus, while we do not condone the State's delay in providing this discovery to defense counsel, that delay, standing alone, does not entitle Gibbs to a new trial.

¶ 31    Gibbs next argues that the trial court improperly denied him the opportunity to cross-examine Winters regarding his 2000 conviction for domestic violence and instead limited the evidence of his conviction to a stipulation.

¶ 32    Initially, the State contends that Gibbs has waived this argument because he consented to the entry of evidence by stipulation. But the record does not support this contention. When the court initially granted Gibbs' motion *in limine* to introduce evidence of Winters' domestic violence conviction, it stated that in the exercise of its discretion, it would allow Gibbs "to ask the victim if he was convicted of domestic battery." The next day, however, the State requested a "clarification" of the court's order and asked, in pertinent part, that the court limit the evidence regarding the conviction to a stipulation. Gibbs objected, arguing that he "should be allowed to go into [the facts of the conviction] with David Winters in the State's case in chief." But the court agreed with the State and ruled that Gibbs would not be permitted to ask Winters about the

conviction. Nevertheless, when cross-examining Winters, Gibbs queried whether he had been convicted of domestic battery, and the court sustained the State's objection to that question. Thus, Gibbs sufficiently preserved this issue for review.

¶ 33    The admissibility of evidence is within the discretion of the court and we will not reverse the court's decision absent an abuse of discretion. *People v. Coleman*, 347 Ill. App. 3d 266, 269 (2004). The parties do not dispute that where a defendant raises a theory of self-defense, evidence of the victim's violent character is relevant to show who was the aggressor. *People v. Lynch*, 104 Ill. 2d 194, 200 (1984). So-called "*Lynch* evidence" may take the form of the victim's convictions for violent crimes or the victim's previous arrests.

¶ 34    In this case, the court allowed Gibbs to present evidence of Winters' 14-year-old conviction for domestic violence via stipulation. Nowhere does *Lynch* require that the court must allow live testimony on the issue of a victim's prior conviction. Rather, it is only where the evidence of a victim's violent character is based on arrests or altercations for which there was no conviction that live testimony is required. See *People v. Simon*, 2011 IL App (1st) 091197, ¶ 72 (quoting *People v. Cook*, 352 Ill. App. 3d 108, 128 (2004)). This is because while a conviction is "persuasive proof" that the victim committed a crime, an arrest offers no such proof since it does not indicate that the victim actually engaged in the alleged conduct. *Cook*, 352 Ill. App. 3d at 128. To that end, this court has required "firsthand testimony as to the victim's behavior" when introducing evidence of a prior arrest for a violent crime. *Id.* No such testimony is needed where, as here, the conviction itself is proof that the victim committed the crime. Indeed, testimony regarding the particulars of a prior conviction can lead to a "trial within a trial" and distract from the relevant issues. See *People v. Oaks*, 216 Ill. App. 3d 1072, 1075 (1991) (trial court did not abuse discretion in excluding testimony regarding circumstances of witness's prior

conviction as "collateral matter"). The trial court certainly could have exercised its discretion to allow limited questioning of Winters, but given the age of the conviction and its factual dissimilarity to the charge in this case, it was likewise appropriate to address the matter via stipulation. Therefore, it was not an abuse of discretion for the court to refuse to allow cross-examination of Winters on the facts of the domestic battery conviction.

¶ 35        Next, Gibbs argues that the trial court improperly denied his motion *in limine* seeking to introduce testimony from Detective Hart and Officers Batzer and Fowler regarding the statements Gibbs, Hoard, and Winters made following the attack. Ordinarily, the trial court's ruling on a motion *in limine* is subject to review for an abuse of discretion, but a party forfeits review of his challenge if he fails to make an offer of proof. *People v. Andrews*, 146 Ill. 2d 413, 421 (1992).

¶ 36        "When a defendant claims that he has not been given the opportunity to prove his case because the trial court improperly barred evidence, he 'must provide [the] reviewing court with an adequate offer of proof as to what the excluded evidence would have been.' " *People v. Pelo*, 404 Ill. App. 3d 839, 875 (2010) (quoting *In re Estate of Romanowski*, 329 Ill. App. 3d 769, 773 (2002)). This offer need not be a formal elicitation of the witness's testimony under oath, but may be informal and consist of counsel's representations regarding the contents of the testimony. *Id.* However, an offer that "merely summarizes the witness' testimony in a conclusory manner is inadequate." *Andrews*, 146 Ill. 2d at 421. In other words, counsel must explicitly state what the excluded testimony would reveal. *Id.*; see also *People v. Peeples*, 155 Ill. 2d 422, 457 (1993) (offer of proof must be "considerably detailed and specific").

¶ 37        Here, Gibbs made neither a formal nor informal offer of proof. Instead, in his written motion he said only that he wished to cross-examine the officers "regarding the statements that

each of the witnesses made to them during the course of their investigation." And in arguing the motion before the trial court, he confirmed that he wanted to "bring in" the statements of Hoard, Gibbs, and Winters to show their effect on the officers' investigation. Gibbs alluded to the fact that the testimony would reveal that his and Hoard's statements corroborated each other, but did not provide any specific details of what the officers' testimony would be with regard to those statements. In the absence of proof as to the substance of the excluded testimony, it is impossible for us to review the trial court's decision. See *Andrews*, 146 Ill. 2d at 422 (without specific details of content of conversation sought to be admitted, court could not determine if excluded testimony had "any relevance to the proceedings at hand"). Particularly in light of the fact that Hoard pled guilty and that her plea (according to Gibbs) entailed stipulated facts at odds with her statements to police, it was incumbent on Gibbs to specifically inform the court via an offer of proof what he anticipated the excluded testimony would be.

¶ 38 In any event, the trial court did not err in precluding Gibbs from introducing prior consistent statements under the guise of the "course of investigation" exception to the hearsay rule. See *People v. Ruback*, 2013 IL App (3d) 110256, ¶ 26 (prior consistent statements may be introduced only to rebut charge of recent fabrication or that witness had motive to testify falsely).

¶ 39 Gibbs' final argument concerns the trial court's answer to the jury's question regarding whether a defendant is justified in using force to reobtain his property when it is no longer in his possession. The trial court answered that the jury had its instructions and should continue to deliberate, but Gibbs contends that the answer should have been "yes."

¶ 40 The State argues that Gibbs failed to preserve this argument for review, and we agree. While Gibbs raised this issue in his posttrial motion, he did not object to the trial court's answer

at the time it was given, resulting in forfeiture. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (objection at trial and in posttrial motion necessary to preserve issue for review).

¶ 41        Ordinarily, we would still review for plain error (see *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (plain error doctrine allows reviewing court to consider unpreserved error in certain narrow circumstances)), but Gibbs not only failed to object to the court's answer to the jury's question, he affirmatively acquiesced in that answer, as evidenced by the following exchange:

> THE COURT: Once property is no longer in the possession of defendant, is the defendant justified in using force to reobtain his property or is it just when the defendant is in possession of that property?
>
> MR. ENGEBRETSON [Assistant State's Attorney]: Judge, we take the same position. You have all the instructions. Please continue to deliberate. ***
>
> MR. NELLIS [defense attorney]: *** I think that given the facts that are presented to the jury this being an ongoing fight, I think that the answer would be yes.
>
> MR. ENGEBRETSON: We would object to that.
>
> MR. NELLIS: Well, I mean I'm not – that's all you send back to them. *Or you have the jury instructions. Continue [ ] deliberating.*"
>
> THE COURT: The answer could be yes, if he reasonably believes that such conduct is necessary to prevent . . .
>
> MR. NELLIS: Yes, if you reasonably believe. I didn't catch the end of that.

THE COURT: If he reasonably believes that such conduct is necessary to prevent another's wrongful interference with personal property lawfully in his possession.

* * *

MR. NELLIS: *I have no problem with your instruction or your answer.*

THE COURT: I don't know if that's a proper one either. I think I will answer please refer to your instructions and continue your deliberations.

MR. ENGEBRETSON: We agree, Judge. (Emphases added.)

¶ 42    This colloquy reflects that Gibbs suggested both an answer of "yes," as well as an answer instructing the jury to continue deliberating. Because Gibbs agreed to the answer given at trial, he cannot now complain that answer was in error. See *People v. Harvey*, 211 Ill. 2d 368, 385 (2004) ("To permit a defendant to use the exact ruling or action procured in the trial court as a vehicle for reversal on appeal would offend all notions of fair play [citation], and encourage defendants to become duplicitous [citation]." (Internal quotation marks omitted.)). Under these circumstances, we decline to review for plain error. *People v. Patrick*, 233 Ill. 2d 62, 77 (2009) (where defendant proffered jury instruction he alleged on appeal was erroneous, court would not review for plain error).

¶ 43    In any event, we find unpersuasive Gibbs' citation to *People v. Swartz*, 186 Ill. App. 3d 399 (1989), as support for his claim that a defendant is justified in using force to reobtain property no longer in his possession. In *Swartz*, we held that the defendant was entitled to an instruction regarding the justifiable use of force where the defendant, while in a car with the victim, pulled the victim's hair to recover his property (the keys to his car). *Id.* at 401. Here, on the other hand, the evidence (including Gibbs' own testimony) revealed that Gibbs chased

Winters and struck him with a brick in order to retrieve his cell phone. Given the dissimilar circumstances and the obvious difference in the degree of force used to reobtain the property, *Swartz* does not support Gibbs' argument that the court should have answered the jury's question in the affirmative.

¶ 44                                            CONCLUSION

¶ 45             Accordingly, the judgment of the circuit court is affirmed.

¶ 46             Affirmed.